J-S47006-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| JONATHAN MICHAEL STONE, | |
| Appellant | No. 1716 MDA 2015 |

Appeal from the PCRA Order September 15, 2015
In the Court of Common Pleas of Lebanon County
Criminal Division at No(s): CP-38-CR-0001886-2011

BEFORE:  SHOGAN, LAZARUS, and JENKINS, JJ.

MEMORANDUM BY SHOGAN, J.:                **FILED AUGUST 01, 2016**

Appellant, Jonathan Michael Stone, appeals from the order denying his petition for relief filed pursuant to the Post Conviction Relief Act ("PCRA"), 42 Pa.C.S. §§ 9541-9546.  We affirm.

The PCRA court summarized the underlying facts of this case as follows:

> During the Summer of 2010, [Appellant] was developed as a suspect in a continuing course of burglaries spanning from early 2009 and continuing through April 2011 around the Cornwall Borough, West Cornwall Township, and Mount Gretna areas of Lebanon County, Pennsylvania.  These crimes appeared to be consistent with similar burglaries occurring in Union Township, Swatara Township, and Jonestown Borough, Lebanon County, Pennsylvania.  Sergeant Brett Hopkins (herein Sgt. Hopkins) of the Cornwall Borough Police Department, Trooper Wesley Levan (herein Tpr. Levan) of the Pennsylvania State Police, and Detective Michael Dipalo (herein Det. Dipalo) of the Lebanon County Detective Bureau investigated the crimes and found that the perpetrator(s) appeared to know when the victims

would not be home. The perpetrator(s) also appeared to target jewelry and other valuables including silver flatware and grandfather clocks. As the investigation continued, investigators concluded that [Appellant] and/or one of his known associates had some connection to the targeted locations or victims. Some of the homes burglarized were in close proximity to [Appellant's] grandmother's residence [in], Mount Gretna, Lebanon County, Pennsylvania, where [Appellant] resided. Some of the burglaries occurred in residences where [Appellant] had done work as a home improvement contractor.

[Appellant] was injured while attempting to flee from a burglary in Camp Hill and was placed in the hospital ward with a broken leg. At this time, [Appellant] reached out to Sgt. Hopkins offering to cooperate with the investigators and provide them with information regarding the string of Burglaries and Thefts in the area. [Appellant] believed he could reduce any potential sentence by cooperating with law enforcement. After being read his **Miranda**[1] warnings, [Appellant] voluntarily provided statements to the police concerning the incidents under investigation and agreed to show police the residences he had burglarized and where he stored some of the stolen items. [Appellant] continuously asked and spoke of being given consideration for his cooperation. Throughout the initial interrogation with Sgt. Hopkins, [Appellant] asked about the Crossroads Program or other drug and alcohol treatment programs. Sgt. Hopkins said they could ask the District Attorney (herein DA). The notion of drug and alcohol treatment stuck in [Appellant's] mind as being set in stone. [Appellant] was later charged with the offenses to which he had confessed. Around the same time period, [Appellant] was charged with similar offenses in Cumberland, Lancaster, and York counties, to which he also pleaded guilty. [Appellant] was sentenced to periods of incarceration in all four counties for the Burglary charges while the Theft charges were *nolle prossed* or merged for purposes of sentencing.

PCRA Court Opinion, 11/3/15, at 4-5.

---

[1] **Miranda v. Arizona**, 384 U.S. 436 (1966).

More specifically, with regard to the above-captioned matter, on November 30, 2011, Appellant was charged with twenty-three counts of theft by unlawful taking, twenty-two counts of burglary, two counts of criminal conspiracy, and one count each of dealing in proceeds of unlawful activities, corrupt organizations, receiving stolen property, and possession of an instrument of crime. On May 2, 2012, Appellant entered an open guilty plea to all charges. On June 13, 2012, the trial court sentenced Appellant to serve an aggregate term of incarceration of twenty to forty years, pay costs and fines, and make restitution to the victims. On August 8, 2013, this Court affirmed Appellant's judgment of sentence. *Commonwealth v. Stone*, 1301 MDA 2012, 83 A.3d 1061 (Pa. Super. filed August 8, 2013) (unpublished memorandum).

On July 9, 2014, Appellant, *pro se*, filed the instant PCRA petition. On July 11, 2014, the PCRA court appointed counsel, who filed an amended PCRA petition on April 22, 2015. The PCRA court held a hearing on May 21, 2015. On September 15, 2015, the PCRA court entered an order denying relief. This timely appeal followed. Both Appellant and the PCRA court have complied with Pa.R.A.P. 1925.

Appellant presents the following issues for our consideration:

1. Whether Plea Counsel was ineffective for unlawfully inducing Appellant into accepting a guilty plea, where Plea Counsel failed: (1) To give Appellant the requested discovery; and (2) To discuss the elements of and the defenses to every charge to determine whether the alleged crimes were actually burglary or

theft in nature as Appellant did not understand the statutory difference between burglary and theft?

2. Whether Plea Counsel was ineffective for failing to file Post-Sentence Motions to withdraw Appellant's Guilty Plea and for Reconsideration of Sentence, where Appellant and Appellant's father explicitly requested Plea Counsel to file said Motions?

3. Whether Appellant was denied his constitutionally guaranteed right to due process when the Commonwealth breached their initial plea agreement where Appellant was to be placed in a drug rehabilitation center in exchange for cooperating with the police during their investigation when he was represented by Attorney Susan Pickford during police interrogation?

Appellant's Brief at 4-5.

Our standard of review of an order granting or denying relief under the PCRA requires us to determine whether the decision of the PCRA court is supported by the evidence of record and is free of legal error. *Commonwealth v. Lippert*, 85 A.3d 1095, 1100 (Pa. Super. 2014). "The PCRA court's findings will not be disturbed unless there is no support for the findings in the certified record." *Id*.

In his first two issues, Appellant argues that trial counsel provided ineffective assistance. In resolving questions of counsel's effectiveness, we begin with the presumption that counsel rendered effective assistance. *Commonwealth v. Bomar*, 104 A.3d 1179, 1188 (Pa. 2014). To overcome that presumption, the petitioner must establish: "(1) the underlying claim has arguable merit; (2) no reasonable basis existed for counsel's action or failure to act; and (3) the petitioner suffered prejudice as a result of counsel's error, with prejudice measured by whether there is a reasonable

probability that the result of the proceeding would have been different." *Id*. (citation omitted). If the petitioner fails to prove any of these prongs, the claim is subject to dismissal. *Id*.

Appellant first claims that trial counsel was ineffective by unlawfully inducing him into pleading guilty when counsel failed to provide Appellant with items in his "discovery packet." Appellant's Brief at 15-17. Appellant contends that, on multiple occasions, he requested the discovery items for review and has not received them. *Id*. In addition, Appellant claims that trial counsel was ineffective for failing to review the specific elements of the charges brought against him. *Id*. at 18-26. Specifically, Appellant alleges that he was under the mistaken belief that burglary and theft were the same crime and that trial counsel did not advise him of the statutory differences. *Id*. at 22. Consequently, Appellant asserts that his plea was unlawfully induced by trial counsel's ineffective assistance.

We have reviewed the briefs of the parties, the relevant law, the thorough opinion of the PCRA court, and the complete certified record before us on appeal. We conclude that the PCRA court's opinion adequately and accurately addresses Appellant's allegations of trial counsel's ineffective assistance with regard to the entry of his guilty plea. PCRA Court Opinion, 11/3/15, at 7-13. As the record establishes, at the PCRA hearing trial counsel testified that, had Appellant requested the discovery items, trial counsel would have given Appellant "copies of everything." N.T., 5/21/15,

at 79. Likewise, trial counsel testified that he explained the elements of the various crimes charged to Appellant. *Id*. at 80-81. Accordingly, because the PCRA court's analysis is supported by the record, we adopt its November 3, 2015 opinion as our own, and conclude that Appellant's allegations that trial counsel provided ineffective assistance with regard to unlawful inducement of the guilty plea lack merit.[2]

Appellant next argues that trial counsel was ineffective for failing to file either a post-sentence motion to withdraw Appellant's guilty plea or a petition for reconsideration of sentence. Appellant's Brief at 26-35. Appellant contends that both he and his father had requested trial counsel to file various motions, and trial counsel failed to do so. *Id*. at 31, 33.[3]

---

[2] The parties are directed to attach a copy of that opinion in the event of further proceedings in this matter.

[3] To the extent Appellant includes in his appellate brief an argument of trial counsel ineffective assistance for failure to file a presentence motion to withdraw his guilty plea, we observe that Appellant has failed to present this issue to the PCRA court in his PCRA petition. Rather, Appellant has raised this issue for the first time on appeal. We have held that when a claim of ineffective assistance is not raised in a PCRA petition, but presented to this Court for the first time on appeal, the claim is waived. *Commonwealth v. Williams*, 909 A.2d 383, 386 n.6 (Pa. Super. 2006) (citing *Commonwealth v. Williams*, 899 A.2d 1060, 1066 n.5 (Pa. 2006)). Moreover, this specific issue was not raised in Appellant's Pa.R.A.P. 1925(b) statement. For this reason too, we are constrained to conclude that this specific argument is waived for purposes of appellate review. *See Commonwealth v. Lord*, 719 A.2d 306, 308 (Pa. 1998) (holding that where a trial court directs a defendant to file a concise statement pursuant to Pa.R.A.P. 1925, any issues not raised in that statement shall be waived). *See also Commonwealth v. Oliver*, 946 A.2d 1111, 1115 (Pa. Super. 2008) (noting that *Lord* "requires
*(Footnote Continued Next Page)*

Again, we have reviewed the briefs of the parties, the relevant law, the record certified on appeal, and the opinion of the PCRA court dated November 3, 2015. It is our determination that the PCRA court appropriately denied Appellant's challenge to the effective assistance of trial counsel with regard to failure to file motions on Appellant's behalf. PCRA Court Opinion, 11/3/15, at 13-21. Thus, we conclude that Appellant's claim fails and adopt the PCRA court's analysis as our own.

In his final issue, Appellant argues that he was denied his constitutional right to due process when the Commonwealth allegedly violated an initial plea agreement. Appellant's Brief at 35-46. Appellant claims that, in exchange for cooperating with the police, he was promised placement in a drug rehabilitation center and, essentially, induced into confessing to the crimes and entering a guilty plea.

However, Appellant has not raised this issue in the context of ineffective assistance of counsel. Thus, because Appellant could have raised the issue in his direct appeal to this Court, but did not do so, it is waived. *See* 42 Pa.C.S. § 9544(b) (stating "an issue is waived if the petitioner could have raised it but failed to do so before trial, at trial, during unitary review, on appeal, or in a prior state post[-]conviction proceeding"). ***See also***

***Commonwealth v. Lambert***, 797 A.2d 232, 240 (Pa. 2001) (PCRA
*(Footnote Continued)* ———————

a finding of waiver whenever an appellant fails to raise an issue in a court-ordered Pa.R.A.P. 1925(b) statement").

petitioner's issues that could have been raised on direct appeal but were not, are waived under 42 Pa.C.S. § 9544(b)).[4]

Order affirmed.

Judgment Entered.

_____

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/1/2016

_____

[4] Even if we had not found this issue to be waived, we would have affirmed on the basis of the PCRA court's thorough discussion of the issue. PCRA Court Opinion, 11/3/15, at 21-26.

ENTERED & FILED
CLERK OF COURTS
LEBANON, PA

2015 NOV 3 AM 9 51

**IN THE COURT OF COMMON PLEAS
OF LEBANON COUNTY, PENNSYLVANIA**

### CRIMINAL DIVISION

|  |  |  |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | |
| | : | |
| v. | : | CP-38-CR-1886-2011 |
| | : | |
| JONATHAN M. STONE, Petitioner | : | |

### ORDER

AND NOW, this 3rd day of November, 2015, after careful consideration of the record, it appears to the Court that the issues raised by Petitioner have previously been addressed by this Court in an Opinion dated September 15, 2015, attached hereto, the Clerk of Courts of Lebanon County is hereby directed to transmit the record of this case, together with this Order in lieu of an Opinion, to the Superior Court of Pennsylvania for its review, pursuant to the requirements of Pa.R.A.P. 1931.

BY THE COURT:

_____, J.
CHARLES T. JONES, JR.

Cc:  Jonathan Faust, Esquire – inofc
     Erin Zimmerer, Esquire – mail
     Amanda C. Pipenberg, Law Clerk – inofc

PURSUANT TO Pa.R.Crim. P. 114
All parties are hereby notified
this date: 11-3-15  JU
Clerk of Courts, Lebanon, PA

IN THE COURT OF COMMON PLEAS
OF LEBANON COUNTY, PENNSYLVANIA

## CRIMINAL DIVISION

COMMONWEALTH OF
PENNSYLVANIA

     v.

JONATHAN M. STONE,
Petitioner

     :
     :
     :
     :     CP-38-CR-1886-2011
     :
     :
     :
     :
     :

## APPEARANCES:

Jonathan Faust, Esquire                  For Commonwealth
District Attorney's Office

Erin Zimmerer, Esquire                  For Petitioner
Zimmerer & Montgomery

## OPINION BY JONES, J.:

Before this Court is Petitioner's Petition for Post-Conviction Relief. Petitioner raises two claims of ineffective assistance of counsel and one claim of a violation of his due process rights. Petitioner claims the following:

1) Petitioner alleges that Plea Counsel was ineffective for unlawfully inducing Petitioner to entering an open guilty plea because:

a. Plea Counsel failed to provide Petitioner with copies of the discovery materials which he requested several times and

b. Plea Counsel failed to explain and discuss the elements of and defenses to the charges of Burglary and Theft as Petitioner did not understand the difference between the two offenses and the defenses to them prior to entering his plea;

2) Petitioner alleges that Plea Counsel was ineffective for failing to file Post-Sentence Motions to Withdraw the Guilty Plea and for Reconsideration of Sentence when Petitioner and his father explicitly requested that such be filed; and

3) Petitioner alleges that his due process rights were violated when the Commonwealth breached the initial plea agreement that Petitioner would be sentenced to a drug rehabilitation center, specifically Crossroads, in lieu of a jail sentence and in exchange for Petitioner's cooperation with the police investigation.

The Commonwealth avers the following in response to the Amended Petition:

1) Petitioner entered an open guilty plea, when Plea Counsel advised him to accept the District Attorney's offer of twelve (12) to thirty (30) years on all of the charges;

2) Petitioner was never promised drug rehabilitation in lieu of jail by the District Attorney or by police;

3) Petitioner was fully aware of the charges against him in that he had a copy of the Criminal Information and had several conversations with Plea Counsel about the factual basis for the charges and attempting to get the District Attorney to reduce the offered plea agreement; and

4) Petitioner signed the written guilty plea colloquy admitting that he understood the charges against him and that he was not promised anything in return for entering a plea of guilty.

3

For the reasons set forth in detail in this Opinion, this Court finds that Petitioner's claims of ineffective assistance of counsel lack merit and that Petitioner knowingly and voluntarily entered an open guilty plea knowing that he would be sentenced to a period of incarceration. Therefore, Petitioner's Petition for Post-Conviction Relief is denied as to all of the enumerated claims therein. The following Opinion contains the legal and factual findings of this Court, as well as the rationale for the denial of Petitioner's claims.

## I.  FACTUAL HISTORY

During the Summer of 2010, Jonathan M. Stone (herein Petitioner) was developed as a suspect in a continuing course of burglaries spanning from early 2009 and continuing through April 2011 around the Cornwall Borough, West Cornwall Township, and Mount Gretna areas of Lebanon County, Pennsylvania. These crimes appeared to be consistent with similar burglaries occurring in Union Township, Swatara Township, and Jonestown Borough, Lebanon County, Pennsylvania. Sergeant Brett Hopkins (herein Sgt. Hopkins) of the Cornwall Borough Police Department, Trooper Wesley Levan (herein Tpr. Levan) of the Pennsylvania State Police, and Detective Michael Dipalo (herein Det. Dipalo) of the Lebanon County Detective Bureau investigated the crimes and found that the perpetrator(s) appeared to know when the victims would not be home. The perpetrator(s) also appeared to target jewelry and other valuables including silver flatware and grandfather clocks. As the investigation continued, investigators concluded that Petitioner and/or one of his known associates had some connection to the targeted locations or victims. Some of the homes burglarized were in close proximity to Petitioner's grandmother's residence of 201 Timber Road, Mount Gretna, Lebanon County, Pennsylvania, where Petitioner resided. Some of the burglaries occurred in residences where Petitioner had done work as a home improvement contractor.

4

Petitioner was injured while attempting to flee from a burglary in Camp Hill and was placed in the hospital ward with a broken leg. At this time, Petitioner reached out to Sgt. Hopkins offering to cooperate with the investigators and provide them with information regarding the string of Burglaries and Thefts in the area. Petitioner believed he could reduce any potential sentence by cooperating with law enforcement. After being read his *Miranda* warnings, Petitioner voluntarily provided statements to the police concerning the incidents under investigation and agreed to show police the residences he had burglarized and where he stored some of the stolen items. Petitioner continuously asked and spoke of being given consideration for his cooperation. Throughout the initial interrogation with Sgt. Hopkins, Petitioner asked about the Crossroads Program or other drug and alcohol treatment programs. Sgt. Hopkins said they could ask the District Attorney (herein DA). The notion of drug and alcohol treatment stuck in Petitioner's mind as being set in stone. Petitioner was later charged with the offenses to which he had confessed. Around the same time period, Petitioner was charged with similar offenses in Cumberland, Lancaster, and York counties, to which he also pleaded guilty. Petitioner was sentenced to periods of incarceration in all four counties for the Burglary charges while the Theft charges were *nolle prossed* or merged for purposes of sentencing.

## II.  PROCEDURAL HISTORY

Petitioner was charged with the following on December 1, 2011 in Lebanon County:

1. One (1) count of Dealing in Proceeds of Unlawful Activities (F1);

2. One (1) count of Criminal Conspiracy/Dealing in Proceeds of Unlawful Activities (F1);

3. One (1) count of Corrupt Organizations (F1);

5

4. Twenty-two (22) counts of Burglary (F1);

5. Thirteen (13) counts of Theft by Unlawful Taking (F3);

6. One (1) count of Theft by Unlawful Taking (F2);

7. One (1) count of Receiving Stolen Property (F3);

8. One (1) count of Conspiracy/Receiving Stolen Property (F3);

9. One (1) count of Possession of an Instrument of Crime (M1);

10. Two (2) counts of Theft by Unlawful Taking (M2); and

11. Seven (7) counts of Theft by Unlawful Taking (M1).

The Criminal Information charging Petitioner in Lebanon County had a total of fifty-one (51) counts.

Petitioner entered an open guilty plea to all of the above charges on May 2, 2012. Unbeknownst to this Court or the Court Stenographer on the day of his guilty plea, the disk in the Court Stenographer's machine was not functioning properly or was a defective disk. Unfortunately, the disk was so bad that no one was able to recover the notes of testimony taken at Petitioner's guilty plea, even after being sent out to the manufacturer. Thus, the Court and both parties are without the benefit of a transcript for Petitioner's guilty plea.

On June 13, 2012, Petitioner was sentenced to pay costs and fines in connection to these charges, to make restitution to the victims, and to be imprisoned in a State Correctional Institution for an aggregate, indeterminate period the minimum of which shall be twenty (20) years and the maximum not to be more than forty (40) years. This sentence was to run concurrent to any other sentences imposed upon Petitioner. Petitioner did not file Post-Sentence Motions with this Court. Petitioner (through Plea Counsel) filed a timely Notice of Appeal to the Superior Court on July 10, 2012. Petitioner was directed to file a Concise Statement of Matters Complained of on Appeal on July 11, 2012. Petitioner filed his Concise Statement on July 26, 2012. This Court affirmed its rulings and sent the file to the

6

Superior Court on September 20, 2012. The Superior Court affirmed Petitioner's sentence on August 3, 2013. Petitioner was represented in Lebanon County by Attorney Charles Buchanio (herein Att. Buchanio or Plea Counsel) prior to entering his plea and through his Direct Appeal to the Superior Court. Plea Counsel filed an *Ander's* brief along with the Direct Appeal and requested that he be permitted to withdraw as counsel. Plea Counsel's request was granted in the Opinion of the Superior Court dated August 3, 2013.

Petitioner filed a *pro se* Petition for Post-Conviction Relief (herein pro se Petition) on July 9, 2014. Attorney Erin Zimmerer (herein Att. Zimmerer or PCRA counsel) was appointed as PCRA Counsel on July 11, 2014. The Commonwealth filed a response to Petitioner's pro se Petition on July 25, 2014. This Court filed an Order on March 3, 2015 directing the parties to contact Court Administration to schedule a PCRA Hearing. A PCRA Hearing (herein the Hearing) was scheduled for May 21, 2015. PCRA Counsel filed an Amended Petition on April 22, 2015 (herein Amended Petition). Upon PCRA Counsel's Motion, this Court granted Petitioner the opportunity to present evidence as to the issues raised in the pro se Petition and the Amended Petition at the Hearing. The Hearing was held as scheduled. The matter is now ripe for disposition.

## III. DISCUSSION

Petitioner raises issues of ineffective assistance of counsel and violations of his due process rights in his Amended Petition. The Court shall address these issues separately.

### A. Ineffective Assistance of Counsel

Petitioner alleges that he was denied effective assistance of counsel in the following ways:

7

1. Counsel unlawfully induced Petitioner to enter a plea of guilty by failing to:

   a. Provide Petitioner with the discovery materials that he had previously requested and

   b. Discuss the elements of Burglary and Theft by Unlawful Taking with Petitioner who did not understand the difference between the charges; and

2. Counsel failed to file Post-Sentence Motions to Withdraw the Guilty Plea and for Reconsideration of Sentence when Petitioner and his father specifically requested that a Post-Sentence Motion be filed.

Ineffective assistance of counsel may be raised in a Petition under the Post-Conviction Relief Act where counsel's performance "in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place." **42 Pa.C.S.A. §** 9542(2)(ii). Trial counsel is presumed to be effective, and the Defendant bears the burden of proving otherwise. **Commonwealth v. Lewis**, 708 A.2d 497 (Pa.Super. 1998); **Commonwealth v. Williams**, 570 A.2d 75 (Pa. 1990). In determining whether counsel rendered ineffective assistance, the Court must first determine whether the issue underlying the claim of ineffectiveness has even arguable merit. **Commonwealth v. DiNicola**, 751 A.2d 197 (Pa.Super. 2000); **Commonwealth v. Johnson**, 588 A.2d 1303 (Pa. 1991). If the claim is without arguable merit, the Court's inquiry ends, as counsel will not be deemed ineffective for failing to pursue a meritless issue. **Id.** Even if the underlying claim is of arguable merit, the Defendant must establish that the course of action chosen by counsel had no reasonable basis designed to effectuate the Defendant's interest. **Id.** In addition, the Defendant must also establish that, but for counsel's deficient performance, the

8

result of the trial would have been different. Id. No relief is due, however, on any claim that has been waived or previously litigated, as those terms have been construed in the decisions of the Court. See 42 Pa.C.S.A. § 9543(a)(3).

Relief may be granted for ineffective assistance of counsel on the basis of a guilty plea when it can be shown that counsel's ineffectiveness caused the plea to be unknowing and involuntary. Commonwealth v. Yager, 454 Pa.Super. 428, 437 (1996). This standard is similar to the "manifest injustice" applicable to all post-sentence attempts to withdraw a plea. Id. "The judge shall conduct a separate inquiry of the defendant on the record to determine whether the defendant understands and voluntarily accepts the terms of the plea agreement on which the guilty plea ... is based." Pa.R.C.P. Rule 590(B)(2). The Court is required to ask a series of questions on the record to determine if a defendant understands his or her rights, understands the charge(s) against them, and understands the punishment that might be imposed. See Commonwealth v. Persinger, 532 Pa. 317 (1992); Commonwealth v. Kulp, 476 Pa. 358 (1978); Commonwealth v. Mendoza, 730 A.2d 503 (Pa.Super. 1999).

### 1. Unlawful Inducement to Enter a Guilty Plea

Petitioner's first claim of ineffective assistance of counsel contains two allegations. First, that he requested copies of the discovery materials and Plea Counsel failed to provide those materials to him. Second, that Plea Counsel did not explain the elements of Burglary and Theft, or the defenses thereto, and he did not understand the charges against him when he entered his guilty plea. Petitioner claims that these two failures on the part of Plea Counsel led Petitioner to enter a guilty plea, which he would not have done had Plea Counsel given him discovery and explained the elements of the charges.

9

## a. Discovery.

Petitioner alleges that Plea Counsel unlawfully induced him to enter a plea of guilty because he failed to provide Petitioner with the discovery materials which he had requested. Petitioner alleges that Att. Buchanio failed to provide him with the discovery materials from the DA. Petitioner alleges that this failure rises to the level of ineffective assistance of counsel. Att. Buchanio testified that he received discovery from the Commonwealth which consisted of two disks, multiple pages of material, and the Criminal Information. (Hearing Transcript at p 77) Att. Buchanio reviewed all of the discovery provided to him. One disk contained photos of the items stolen in this matter and the other was the audio file of Petitioner's confession to police.

Att. Buchanio testified that he did give Petitioner a copy of the Criminal Information so that he could review all of the charges against him in this case, but does not recall Petitioner asking for the rest of discovery. (Hearing Transcript at pp 77-78) He further testified that if Petitioner had specifically requested copies of all of the discovery, he would have provided such copies to Petitioner. (Hearing Transcript at pp 78-79) Att. Buchanio did recall asking Petitioner if he wanted to challenge the confession, but Petitioner did not want to do so because he had been given his rights prior to making a statement to police. (Hearing Transcript at p 78) Petitioner has not identified anything in the discovery materials that would have led him to go to trial or that failure to produce those materials to Petitioner was so unreasonable under the circumstances of this case that it rose to the level of manifest injustice. Petitioner has not shown how this alleged failure unlawfully induced him to enter a guilty plea in this case.

## b. Statutory differences between charges.

Petitioner alleges that Att. Buchanio failed to explain the elements of, and the defenses to, Burglary and Theft by Unlawful Taking to him. Petitioner argues that

10

if Plea Counsel had defined these charges for Petitioner, he would have told Plea Counsel that some of the Burglary charges should have been Theft by Unlawful Taking charges because of the facts of the offense. Petitioner alleges that Plea Counsel's failure to define the offenses so that Petitioner understood them, unlawfully induced him to enter a guilty plea to all of the offenses as charged instead of challenging the factual basis for the charges at trial. Specifically, Petitioner alleges that in two instances the buildings were abandoned and in one instance he was in the building to use the restroom and get a rake for work. Since he believes this was ineffective assistance, he alleges that his plea was not knowingly and voluntarily entered. At the time of sentencing, this Court told Petitioner that it did not believe Petitioner's assertion that the buildings were abandoned or that he was privileged to be in the building at the time he committed the offenses. (Sentencing Transcript at pp 15-16) This Court still finds no merit in Petitioner's argument that some of the offenses were Theft rather than Burglaries. (See Hearing Transcript at pp 13-18)

Burglary is defined as follows:

A person commits the offense of burglary if, with the intent to commit a crime therein, the person:

(1) enters a building or occupied structure, or separately secured or occupied portion thereof that is adapted for overnight accommodations in which at the time of the offense any person is present;

(2) enters a building or occupied structure, or separately secured or occupied portion thereof that is adapted for overnight accommodations in which at the time of the offense no person is present;

(3) enters a building or occupied structure, or separately secured or occupied portion thereof that is not adapted for overnight accommodations in which at the time of the offense any person is present; or

(4) enters a building or occupied structure, or separately secured or occupied portion thereof that is not adapted for overnight

11

accommodations in which at the time of the offense no person is present.

18 Pa.C.S.A. § 3502(a).

The statutory defenses to Burglary include that "the building or structure was abandoned" and that the person "is licensed or privileged to enter." **See 18 Pa.C.S.A. § 3502(b).** Theft by Unlawful Taking – Movable Property is defined as follows: "a person is guilty of theft if he unlawfully takes, or exercises unlawful control over, moveable property of another with the intent to deprive him thereof." **18 Pa.C.S.A. § 3921(a).**

Plea Counsel testified at the Hearing that he defined each of the offenses with which Petitioner was charged and then reviewed the factual basis for each individual charge. Plea Counsel explained that he did not define the offense as he went over each charge because there were multiple charges for Burglary and Theft. He explained the elements of each type of offense and the defenses thereto prior to reviewing the factual basis for each individual count of the Criminal Information with Petitioner. This Court notes that Petitioner was charged under the same statutes in Cumberland[1], Lancaster[2], and York[3] Counties around the same time as the charges in this case. Petitioner pleaded guilty in all four counties.[4]

This Court believes that Att. Buchanio did explain the elements of and the defenses to the charges of Burglary and Theft to Petitioner prior to the entry of Petitioner's open guilty plea. Even if Att. Buchanio had not done so, this Court finds it difficult to believe that no one explained the charges of Burglary and Theft to Petitioner so that he understood the difference between them or the defenses to them.

---

[1] CP-21-CR-2705-2011; CP-21-2706-2011; CP-21-2707-2011; CP-21-2708-2011; CP-21-2709-2011; CP-21-2710-2011; CP-21-2711-2011; and CP-21-1502-2011.

[2] CP-36-CR-31-2012 and CP-36-CR-39-2012.

[3] CP-67-CR-402-2012.

[4] Petitioner pleaded guilty on the following dates: Cumberland County (all docket numbers) on March 1, 2012; York County on April 18, 2012; and Lancaster County (both docket numbers) on September 7, 2012. Lancaster is the only county in which Petitioner pleaded guilty after he pleaded guilty in this matter.

12

Petitioner was charged under the same statutes in three other counties and was represented by separate counsel in each of those cases. It seems highly unlikely that none of Petitioner's attorneys explained these charges to him prior to him pleading guilty. Petitioner entered his guilty plea in Lebanon County after pleading guilty and being sentenced in Cumberland and York Counties.

Further, this Court goes through an oral colloquy, as required, at the time any person enters a guilty plea. It is the practice of this Court to review the written guilty plea colloquy and ask the individual if they understand the charges against him/her and admit to the factual basis as set forth in the Criminal Information. This Court will not accept a guilty plea unless and until the Court is satisfied that the individual has had sufficient time to review the charges and the factual basis with counsel. While we are without a transcript in this case, this Court does not vary from the general outline of questions asked of defendant's entering guilty pleas before him, which includes the questions mentioned above. (See Hearing Transcript at pp 24-52)

### 2. *Post-Sentence Motions*

Petitioner's second claim of ineffective assistance of counsel alleges that Plea Counsel failed to file Post-Sentence Motions to Withdraw the Guilty Plea and for Reconsideration of Sentence. Petitioner alleges that he and his father specifically requested that Plea Counsel file a Motion to Withdraw the guilty plea prior to sentencing and immediately following sentencing. Plea Counsel did not file a Post-Sentence Motion with this Court, but did file a timely Direct Appeal to the Superior Court on July 12, 2012.

13

### a. Reconsideration of Sentence.

Att. Buchanio testified that he was well aware that Petitioner was less than thrilled with the sentence imposed in this case. (Hearing Transcript at p 84) He testified that Petitioner did not request that he file to Withdraw Petitioner's guilty plea until after sentencing. (Hearing Transcript at p 79) Att. Buchanio was aware that Petitioner wanted to appeal his sentence and did file an appeal to the Superior Court; he testified that Petitioner never asked him to file post-sentence motions. (Hearing Transcript at p 88) Att. Buchanio stated that the Court had been very clear and thorough in explaining its reasoning for the sentence imposed at the time of sentencing. This is why he did not file Post-Sentence Motions seeking Reconsideration of Sentence to the trial court.

Petitioner's appeal to the Superior Court alleged that this Court abused its discretion by 1) sentencing Petitioner to an excessive period of time considering the nature of the crimes and the harm done, 2) issuing consecutive sentences for multiple counts of burglary and related offenses, and 3) sentencing Petitioner to a minimum of twenty (20) years for property damage and theft when it is out of proportion to other sentences imposed by this Court for other crimes. Although Petitioner did not file an appeal raising these issues with this Court, the Court nonetheless issued an Order and Opinion affirming its sentence and sent the file to the Superior Court for review. In affirming the sentence imposed, this Court noted that the Court has broad discretion in sentencing and determining whether to run multiple sentences consecutively or concurrently. **See Commonwealth v. Mouzon**, 571 Pa. 419, 423-25 (2002) (internal citations omitted); **Commonwealth v. Perry**, 883 A.2d 599 (Pa.Super. 2005). This Court explained that it considered the character and experience of Petitioner, the pre-sentence report, the number of victims, the multiple probation violations of Petitioner, the fact that these crimes were committed while on work release from the Lebanon County Correctional Facility, and Petitioner's

14

prior record score. See Commonwealth v. Stone, CP-38-CR-1886-2011, Trial Court Opinion dated September 10, 2012.

The Superior Court affirmed the sentence of Petitioner on August 8, 2013. The Superior Court acknowledged that Petitioner had waived the issue of reconsideration of sentence by failing to raise it at the trial court level. The Superior Court went on to state:

> However, assuming, *arguendo*, that [Petitioner] properly presented his discretionary aspect of sentencing claim in the court below, and that his claim raised a substantial question, it still would afford him no relief. The record reflects that the trial judge was mindful of the sentencing guidelines, the presentence report, the facts and circumstances of the multiple crimes, [Petitioner's] extensive previous criminal history, his current sentences in adjoining counties, his drug problems and his need for stabilization. In addition, the record reflects the court's consideration of "the protection of the public, the gravity of the offense as it relates to the impact on the life of the victim and the community, and the rehabilitative needs of the defendant." 42 Pa.C.S.A § 9721. The terms of the sentence clearly rested within the discretionary power afforded to the trial court and, on this record, there would be no basis for the Court to conclude that the sentence was "clearly unreasonable."

Commonwealth v. Stone, 1301 MDA 2012 Superior Court Opinion dated 8/8/2013 at p 9 (citing 42 Pa.C.S.A. § 9781(c)(2)). The Superior Court concluded that, after "an independent evaluation of the record in this case" Petitioner's appeal "is wholly frivolous." Id. at p 10.

At Sentencing this Court noted that the guideline ranges for the offenses called for "[forty-seven (47) years] and seven months to five hundred seventeen (517) years." (Sentencing Transcript at pp 8 (error in transcript, it says twenty-seven (27) years)) This Court finds that even though Plea Counsel failed to file Post-Sentence Motions to this Court raising the issue of Reconsideration of Sentence, Petitioner was not prejudiced by this failure.

15

### b. Withdraw of Guilty Plea.

Petitioner alleges that he requested Plea Counsel withdraw his plea before he was sentenced in this matter. The notes of testimony in the Sentencing Transcript belie this allegation. Petitioner spoke at sentencing and acknowledged that he was going to have to spend time in jail. Petitioner said nothing about withdrawing his guilty plea when he spoke on his own behalf to this Court. Petitioner's father also failed to raise the issue with this Court at the time of sentencing. **See Sentencing Transcript** dated July 13, 2012.

The Rules of Criminal Procedure allow "at any time before the imposition of sentence, the court may, in its discretion, permit, upon motion of the defendant, or direct, *sua sponte*, the withdrawal of a plea of guilty or *nolo contendere* and the substitution of a plea of not guilty." **Pa.R.Crim.P. 591(a)**. However, "there is no absolute right to withdraw a guilty plea." **Commonwealth v. Unangst**, 71 A.3d 1017, 1020 (Pa.Super. 2013) (citing **Commonwealth v. Flick**, 802 A.2d 620, 623 (Pa.Super. 2002); **Commonwealth v. Forbes**, 450 Pa. 185, 190 (1973)). "The decision to grant such a motion lies within the sound discretion of the trial court." **Commonwealth v. Muhammed**, 794 A.2d 378, 382 (Pa.Super. 2002) (citing **Commonwealth v. Hutchins**, 683 A/2d 674, 675 (Pa.Super. 1996)). "If the trial court finds 'any fair and just reason,' withdrawal of the plea before sentence should be freely permitted, unless the prosecution has been 'substantially prejudiced.'" **Commonwealth v. Forbes**, 450 Pa. 185, 191 (1973) (internal citations omitted). This is commonly referred to as the "two prong test."

"The standard for withdrawal of a guilty plea after imposition of sentence is much higher; a 'showing of prejudice on the order of manifest injustice is required before withdrawal is properly justified.'" **Muhammed**, 794 A.2d 378, 383 (Pa.Super. 2002) (citing **Commonwealth v. Carpenter**, 555 Pa. 434, 454 (1999); **Commonwealth v. Shaffer**, 498 Pa. 342, 346 (1982)). "A plea rises to the level of

16

manifest injustice when it is entered into involuntarily, unknowingly, or unintelligently." Commonwealth v. Stork, 737 A.2d 789, 790 (Pa.Super. 1999) (citing Commonwealth v. Kephart, 406 Pa.Super 321 (1991)).

> Once a defendant has entered a plea of guilty, it is presumed that he was aware of what he was doing, and the burden of proving involuntariness is upon him. Therefore, where the record clearly demonstrates that a guilty plea colloquy was conducted, during which it became evident that the defendant understood the nature of the charges against him, the voluntariness of the plea is established. A defendant is bound by the statements he makes during his plea colloquy, and may not assert grounds for withdrawing the plea that contradict statements he made when he pled.

Commonwealth v. Stork, 737 A.2d 789, 790-91 (Pa.Super. 1999) (internal citations omitted).

> A showing of manifest injustice is required after imposition of sentence since, at this the stage of the proceeding permitting the liberal standard enunciated in *Forbes* might encourage entrance of a plea as a 'sentencing testing device.' We note that disappointment by a defendant in the sentence actually imposed does not represent manifest injustice.

Muhammed, 794 A.2d at 383 (internal citations omitted).

> A court "must examine the guilty plea colloquy." Id. at 383.

> The colloquy must inquire into the following areas: 1) the nature of the charges; 2) the factual basis of the plea; 3) the right to trial by jury; 4) the presumption of innocence; 5) the permissible range of sentences; and 6) the judge's authority to depart from any recommended sentence. This Court evaluates the adequacy of the guilty plea colloquy and the voluntariness of the resulting plea by examining the totality of the circumstances surrounding the entry of that plea.

Id. at 383-84 (internal citations omitted).

As previously noted, the Court is without the benefit of a transcript of the Guilty Plea Colloquy in this case. However, this Court habitually goes over the following oral colloquy with each individual that enters a plea before him:

17

(Name of Defendant), you (your attorney) have (has) indicated that you desire to enter a plea of guilty to (some of) the charge(s) filed against you. We have your written guilty plea which has been marked at Exhibit 1.

Before I accept your written plea there are some additional questions, some of them repeating written ones, I want to ask you:

1. Do you read, write, and understand the English language?
   If the answer to No. 1 was "no":
   a. Was each question on the written statement translated and explained to you in a language you do understand?
   b. Do you understand my questions of you through the interpreter?
2. Have you read the Information listing the charges in your case?
   a. Attorney(s) give factual scenario
   b. Do you understand the charges?
   c. Are you pleading guilty because you did that (those) act(s)?
3. Do you understand that if your plea of guilty is accepted for the charge(s), you could be sentenced by the Court to the maximum penalties set forth in the Criminal Information and the plea colloquy?
4. If it is an open plea, explain that the sentencing judge will listen to what both the Commonwealth and the Defense have to say, then the sentencing judge will have three options:
   a. Defendant could be sentenced to Probation. If Defendant is sentenced to probation and violates the terms of probation, he will be brought back before the Court and the sentencing judge could sentence him up to the maximum sentence allowed by law.
   b. Defendant could be sentenced to a term of incarceration in the Lebanon County Correctional Facility; or
   c. Defendant could be sentenced to a term of incarceration in a State Correctional Facility.
   d. The sentencing judge will determine if the sentences will run concurrently or consecutively.
5. If there is a plea agreement:
   a. Do you understand that the plea agreement entered by yourself, your attorney, and the District Attorney is that at the time of sentencing the District Attorney will recommend the Court impose the following sentence: (sentence)?
   b. Do you understand that the Court is not bound by that agreement but if it is not accepted you would be permitted to withdraw you plea at anytime prior to sentencing?

18

6. I have some questions about the written guilty plea before it was presented as Exhibit 1:

   a. Did you have enough time to review that written guilty plea before it was presented to the Court?

   b. Did you understand all of the questions which were set forth?

   c. Are those your initials on the bottom of each page?

   d. Is that your signature on the last page?

7. Do you realize that if you are not a U.S. citizen this plea of guilty could cause you to be deported?

8. Do you at this time, have any questions you'd like to ask of your attorney, the District Attorney, or the Court?

9. You are represented by Counsel. Have you discussed your case fully with Counsel and explained everything you know about it to him/her?

10. Are you satisfied with your attorney and the way you have been represented?

11. Knowing all of the things that we have discussed, do you still wish to enter a plea of guilty to the charge(s) as they are presented?

    Very well. The Court finds that your decision to plead guilty is freely, voluntarily, and intelligently made and that you have had the advice of a competent attorney with whom you say you are satisfied. Consequently, we direct that the plea be entered in writing on the reverse side of the Information, and order a presentence investigation report to be filed with this Court prior to the imposition of sentence. Sentencing in this matter shall be set for (date of sentencing given).

**Oral Colloquy of the Undersigned Judge.**

This Court requires that every defendant entering a plea of guilty make an admission to the factual basis offered by the Commonwealth. This Court has defense counsel recite the facts alleged in the Criminal Information to each defendant and asks if those facts are the facts to which the defendant is admitting. This Court will not accept a guilty plea from any defendant that denies committing the acts alleged in the Criminal Information as these are the basis of the criminal charges to which the defendant is pleading guilty. (See Hearing Transcript at pp 24-52)

In this case, Att. Buchanio testified that he took a guilty plea colloquy draft to Petitioner and had him read it. (Hearing Transcript at p 80) Att. Buchanio filled in

19

the answers to the written guilty plea colloquy later on a computer basing the answers on the discussion he had with Petitioner. (Hearing Transcript at p 91) While this Court does not approve of the manner in which the written colloquy was filled out, we are satisfied that Plea Counsel had Petitioner review the colloquy and answered all of the questions appropriately, except for question eighteen (18).[5] The written guilty plea colloquy showed that Petitioner understood the charges against him and what he was doing by entering an open guilty plea. Petitioner specifically answered the question of voluntariness in the affirmative on the written colloquy. This Court would never have allowed Petitioner to enter a guilty plea if Petitioner had made any statements alleging that his plea was anything other than his own decision free of threats, coercion, or force by any person. Petitioner has not alleged any facts which would amount to a 'fair and just reason' for withdrawal of his guilty plea prior to sentencing. This Court would not have granted Petitioner's request to withdrawal his plea prior to sentencing without such a reason. Petitioner has also not alleged any facts which would amount to 'manifest injustice' which would require the Court to allow Petitioner to withdrawal his guilty plea after the imposition of sentence. This Court finds that any request to withdrawal his guilty plea after the imposition of sentence in this matter would have been an attempt to test the sentencing.

This is not the first time that Petitioner has entered a plea. Petitioner entered a *nolo contendere* plea in Lebanon County on January 27, 2010. The written plea colloquy which Petitioner filled out in that matter is identical to the guilty plea colloquy initialed and signed by Petitioner in this matter. Petitioner also entered guilty pleas in two (2) other counties on similar charges prior to entering his plea in

---

[5] This will be discussed in detail below.

20

this matter. Petitioner is well aware of the contents of the written colloquy form and had ample opportunity to seek guidance and advice prior to entering this plea.

Petitioner voluntarily entered an open plea. Petitioner spoke at sentencing and failed to make any mention of a desire to withdraw his plea. Petitioner's father also spoke at sentencing and failed to mention any desire of Petitioner to withdraw his plea. This Court finds that Petitioner did not make a request of Plea Counsel to withdrawal his plea prior to sentencing. This Court finds that any request to withdraw Petitioner's guilty plea after the imposition of sentence would have been denied for failure to show manifest injustice.

### B. Violations of Due Process Rights

Petitioner's final claim is that his due process rights were violated when the Commonwealth breached their initial agreement with Petitioner. Petitioner alleges that the DA and Sgt. Hopkins promised that he would be placed in a drug rehabilitation program in exchange for cooperating with the police investigation. Petitioner alleges that he was represented by Attorney Susan Pickford (herein Att. Pickford) during the initial interrogation when this promise was made to him. The Crossroads Program is a three (3) year drug and alcohol treatment program. In order to be eligible for the program, a person must not be serving a long-term sentence of incarceration, to be considered. The Program can be part of a sentence in cases where the defendant will be serving a short term of incarceration or is sentenced to probation.

Petitioner testified at the Hearing that Att. Ditzler and Sgt. Hopkins wanted him to cooperate with the investigation. (Hearing Transcript at p 7) Att. Ditzler and Sgt. Hopkins testified that Petitioner had reached out to them offering information relevant to the investigation; they did not seek him out. (Hearing Transcript at pp 62, 65) Att. Pickford testified that she was present at the initial interrogation

21

between Petitioner, Att. Ditzler, and Sgt. Hopkins, but that she did not represent him in this matter. (Hearing Transcript at pp 72-73) Att. Pickford represented Petitioner on matters in another county at that time. (Hearing Transcript at p 72)

Att. Pickford testified that she did not recall Att. Ditzler or Sgt. Hopkins offering Petitioner any deal during the initial interrogation. (Hearing Transcript at p 74) She did recall Petitioner talking about rehabilitation throughout the interrogation, but was not aware of any promise by the DA or police. (Hearing Transcript at pp 73-74). She also testified that she had made calls to the DA in order to determine if such a deal was a possibility. (Hearing Transcript at p 74) Att. Ditzler testified that he would not have offered Petitioner any deal at that time because Petitioner had not been charged in this matter.[6] (Hearing Transcript at pp 65) Sgt. Hopkins testified that he may have mentioned that Petitioner's cooperation could be considered by the DA to get a plea deal, but he did not promise any particular deal to Petitioner. (Hearing Transcript at p 63) Petitioner testified that Sgt. Hopkins had given him a pamphlet for the Crossroads Program. (Hearing Transcript at p 7) Sgt. Hopkins denied giving Petitioner a pamphlet for the Program. (Hearing Transcript at p 63)

Att. Buchanio testified that he was aware that Petitioner was not happy with the sentence imposed in this matter because Petitioner had been convinced that he had been promised a deal that he would be sentenced to the Crossroads Program in lieu of jail. (Hearing Transcript at pp 79-80) Att. Buchanio testified that he "made a real pest" of himself when speaking with Sgt. Hopkins about any potential promises made to Petitioner. (Hearing Transcript at p 84) Att. Buchanio made repeated requests of Att. Ditzler to reconsider the plea offer to Petitioner. (Hearing Transcript at p 80) Att. Ditzler had offered Petitioner twelve (12) years to thirty (30)

---

[6] This Court notes that Petitioner had been charged in neighboring counties at that time, but had not been charged with related charges in Lebanon County.

22

years and was not willing to make any other offer to Petitioner. (Hearing Transcript at pp 69, 71) Att. Ditzler read an e-mail that he had sent to Att. Buchanio stating that he "believe[d] the twelve years [was] a gift." (Hearing Transcript at p 69) He also read an e-mail from District Attorney Dave Arnold (herein Att. Arnold) to Att. Buchanio stating that Petitioner had "got a lot of credit with the offer Ditzler made. Twelve years is not a lot of time for 20-plus burglaries." (Hearing Transcript at p 70) Att. Ditzler and Sgt. Hopkins unequivocally stated that Petitioner was never promised that he would not go to jail or that he would be sentenced to a drug and alcohol program in exchange for his cooperation. (Hearing Transcript at pp 61, 63, 65-66)

Plea Counsel testified that he advised Petitioner to accept the plea deal offered by the DA, but Petitioner was adamant that he wanted to enter an open guilty plea. (Hearing Transcript at p 76, 83) At sentencing, Plea Counsel stated that Petitioner was not promised anything in writing, but that Petitioner had tried to help himself out by cooperating with Sgt. Hopkins. (Sentencing Transcript at pp 7-8) He said he "would hate to see [Petitioner] go to jail for so long that he doesn't have any spark when he comes out." (Sentencing Transcript at p 8) Plea Counsel requested that the Court "let him have the opportunity to serve some of his time concurrently, and not just with the other charges that are grouped together in Lebanon County, but with the charges for which he has already been sentenced in Lancaster County." (Sentencing Transcript at p 9)

Petitioner's father (herein Father) also spoke at sentencing. Father stated that Petitioner had been a different person when he was taking drugs. (Sentencing Transcript at p 10) He also stated that Petitioner had a lot of family support. (Sentencing Transcript at pp 10-11) He specifically said, "I think if Jon gets sentenced where after a number [of] years he can come out, he will be a benefit to our society. If he could go into programs he can be productive." (Sentencing

23

Transcript at p 11) He went on to say, "I do plan to support him when he comes out of prison, if I'm able." (Sentencing Transcript at pp 11-12)

Petitioner himself spoke at his sentencing stating:

I went to a police officer who I trusted, [Sgt.] Hopkins. He came out several times and talked to me about this. He came out to the prison. We talked for a while. He said if I was to show them and tell them everything I did in Lebanon County, he would try to get me into the Crossroads Program. [Sgt.] Hopkins even went as far as getting me pamphlets and sent them to me into [sic] the prison. I understood the Crossroads Program was a long-term program. I did everything, absolutely everything I was supposed to do that they asked me to do.

(Sentencing Transcript at pp 13-14) Petitioner went on to say, "I did all of this. I know I screwed up. *I do not contest the fact that I need to serve jail time.* I'm -- I'm hoping that you take that into consideration and give me a concurrent sentence to the sentence I already have, and not make it a maximum sentence, but what you deem to be fair and necessary. I know -- I talked to a lot of guys about state prison and a lot of programs that are offered there. I plan on taking part in everything that I can." (Sentencing Transcript at p 14 (emphasis added))

Petitioner also corrected his answer to question eighteen on the written guilty plea colloquy at the time he entered his plea. Question eighteen (18) reads: Other than any plea agreement that has been negotiated for you and/or any recommendation by the Commonwealth, have any promises been made to you to persuade you to enter a plea of guilty? The answer "yes" was marked by a computer, as Plea Counsel testified he had marked the colloquy. However, this Court caught that answer and asked Petitioner if this answer was correct or if he wanted to change the answer to "no." This Court would not have accepted Petitioner's guilty plea if Petitioner had said the answer "yes" was the correct answer since Petitioner was entering an open plea. Petitioner changed the answer to "no" and initialed the

24

correction. At the time of the guilty plea, Petitioner would have been given time to discuss this question with Plea Counsel if needed.

At sentencing, this Court noted that Petitioner had made complaints to a newspaper complaining about the Lebanon County Probation Department and how they do not do their jobs; that Petitioner had complained about the Lebanon County Police Department, including a letter from Petitioner stating that Sgt. Hopkins was out to get him; and various other complaints about the probation and police involved in this and his other criminal cases. (Sentencing Transcript at p 20-21) This Court made note that the offenses with which Petitioner had been charged carried an aggregate range of forty-seven (47) years and seven (7) months to five hundred seventeen (517) years' incarceration. (Sentencing Transcript at p 8 (error in transcript, says 27 instead of 47)) Based on Petitioner's behavior and complaints up to the time of sentencing this Court stated: "I am sure that after I sentence you today as soon as you walk outside that door I will be the problem. You will write letters. You will say whatever you want to your attorney. You'll complain about the time that you are going to be given here. I have no doubt about that." (Sentencing Transcript at p 21)

Petitioner was well aware of the fact that he was entering an open guilty plea. This means that the Commonwealth was not agreeing to make any recommendation to the Court for a particular sentence. Petitioner signed and initialed the written guilty plea colloquy stating that he had not been promised anything in return for his plea of guilty. Petitioner also answered the questions of this Court in a manner that would have affirmed those answers, or this Court would not have accepted his plea. Plea Counsel testified that he was not aware of any offer by the Commonwealth for drug and alcohol treatment in lieu of jail time. Att. Ditzler testified that no offer was made to Petitioner other than for twelve (12) to thirty (30) years. Sgt. Hopkins testified that he may have mentioned Crossroads in response to a question from

25

Petitioner, but that he did not promise Petitioner any deal in exchange for his cooperation. An e-mail from Att. Arnold noted that he was not willing to give Petitioner any more consideration for his cooperation than was reflected in the original plea offer. Further, at the time of sentencing Plea Counsel, Father, and Petitioner acknowledged that Petitioner would be sentenced to some jail time.

Based on the above, this Court finds that Petitioner has not established that he was offered a deal for Crossroads in lieu of jail time. This Court further finds: Petitioner was aware at the time of sentencing that he would be sentenced to a term of incarceration on these charges, as was his father. The Commonwealth never offered Petitioner a deal to be sentenced to drug and alcohol treatment, at Crossroads or elsewhere, in lieu of jail time in exchange for his cooperation. Thus, Petitioner's claim of a due process violation is lacks merit.

## IV. CONCLUSION

For the reasons set forth above, this Court finds that Petitioner has not met his burden in proving any of his asserted claims. Therefore, Petitioner's Petition for Post-Conviction Relief is denied. An Order will be entered consistent with the foregoing.

26