J-S18039-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| V. | : | |
| | : | |
| REBECCA HETHERINGTON | : | |
| | : | |
| Appellant | : | |
| | : | |
| | : | No. 2507 EDA 2022 |

Appeal from the Judgment of Sentence Entered May 6, 2022
In the Court of Common Pleas of Carbon County Criminal Division at
No(s): CP-13-CR-0000002-2020

BEFORE: PANELLA, P.J., DUBOW, J., and STEVENS, P.J.E.*

MEMORANDUM BY STEVENS, P.J.E.: **FILED AUGUST 29, 2023**

Appellant, Rebecca Hetherington, appeals from the judgment of sentence entered by the Court of Common Pleas of Carbon County following her entry of a guilty plea to one count of Simple Assault, 18 Pa.C.S.A. §2701(a)(1), and a stipulation to pay restitution to her victim in the amount of $23,334.85. Herein, Appellant contends that insufficient evidence supported the restitution amount and that her plea was unknowing because an ambiguously worded restitution stipulation clause contained in her written guilty plea caused her to believe she owed only one-half the restitution amount stated. After careful review, we affirm.

The trial court opinion sets forth the relevant facts and procedural history, as follows:

_____

* Former Justice specially assigned to the Superior Court.

Appellant was charged with Aggravated Assault, 18 Pa.C.S.A. § 2702, Simple Assault, 18 Pa.C.S.A. § 2701(a)(1) and Harassment, 18 Pa.C.S.A. § 2709(a)(1) with regard to an incident which occurred at Skirmish Paintball in Penn Forest Township, Carbon County, Pennsylvania on July 11, 2019, where both Appellant and Thomas Grande injured Nicholas DiCostanzo [after Grande confronted him and punched him to the ground, whereupon Appellant stomped on DiCostanzo's ankle causing it to fracture].

On May 18, 2021, Appellant entered into a *nolo contendere* plea to Simple Assault, with the remaining charges to be dismissed and restitution to Mr. DiCostanzo to be later determined. On July 6, 2021, a pre-sentence investigation report was prepared which included a recommendation of restitution in the amount of twenty-two thousand three hundred thirty-three dollars and ninety-eight cents ($22,333.98) to Mr. DiCostanzo. On August 23, 2021, Appellant filed a "Petition for Leave to Withdraw Nolo Contendere Plea" which included an assertion that she was not advised by her former counsel that she would be directed to remit restitution to Mr. DiCostanzo as part of her sentence. On September 27, 2021, [the trial court] entered an order granting Appellant's petition to withdraw her *nolo contendere* plea.

On May 2, 2022, Appellant entered into a guilty plea to Simple Assault, and the remaining charges were dismissed. The written stipulation [accompanying Appellant's written guilty plea colloquy] included the following language: "As per prior PSI . . . Restitution to victim in *pro rata* share of $23,344.85.[FN] That same day, Appellant was sentenced to a period of probation for twenty-four (24) months under the supervision of the Carbon County Adult Probation and Parole Department and directed to pay restitution in the amount of twenty-three thousand three hundred forty-four dollars and eighty-five cents ($23,344.85) to Mr. DiCostanzo.

---

FN    On August 30, 2022, Appellant's counsel submitted a written request for a thirty (30) day extension of the one hundred twenty-day time limit for rendering a decision on Appellant's post-sentence motions.

---

On May 6, 2022, Appellant filed her "Post-Sentence Motions Submitted by the Defendant" challenging the imposition of restitution and seeking clarification regarding the amount of

restitution for which she is responsible. Appellant claimed she believed that she was responsible for one-half of twenty-three thousand three hundred forty-four dollars and eighty-five cents ($23,444.85) rather than that entire sum.

On September 27, 2022, following an extensive hearing and the receipt of supplemental documentation from Mr. DiCostanzo, [the trial court] entered an order denying Appellant's post-sentence motions and directing her to pay restitution in the amount of twenty-three thousand three hundred forty-four dollars and eighty-five cents ($23,344.85) to Mr. DiCostanzo.[] Trial Court Order of 9/27/22. Although the record supported a higher restitution amount, [the trial court] found that because the parties entered into a written stipulation for a guilty plea which included restitution to Mr. DiCostanzo in the pro rata share of twenty-three thousand three hundred forty-four dollars and eighty-five cents ($23,344.85). *Id*.

On October 4, 2022, Appellant filed an appeal to the Superior Court of Pennsylvania requesting review and reversal of [the trial court's judgment of sentence, with specific reference to the hearing on her post-sentence motion challenging the amount of her restitution sentence]. On October 5, 2022, [the trial court] entered an order directing Appellant to file a concise statement of matters complained of on appeal pursuant to Pa.R.A.P. 1925(b). In compliance with our order, Appellant filed her "Concise Statement of Matters Complained of on Appeal" on October 25, 2022.

Trial Court Opinion, 11/2/22, at 1-4.[1]

_____

[1] A notice of appeal must be filed within 30 days of the entry of the order being appealed. *See* Pa.R.A.P. 903(a); ***Commonwealth v. Moir***, 766 A.2d 1253 (Pa. Super. 2000). If the defendant files a timely post-sentence motion, the notice of appeal shall be filed within 30 days of the entry of the order deciding the motion. *See* Pa.R.Crim.P. 720(A)(2)(a). A trial court has 120 days to decide a post-sentence motion, and if it fails to decide the motion within that period, the motion is deemed denied by operation of law. See Pa.R.Crim.P. 720(B)(3)(a). When the motion is deemed denied by operation of law, the clerk of courts shall enter an order deeming the motion denied on behalf of the trial court and serve copies on the parties. *See* Pa.R.Crim.P. 720(B)(3)(c). The notice of appeal shall be filed within 30 days of the entry
*(Footnote Continued Next Page)*

J-S18039-23

Consistent with the issues raised in her Pa.R.A.P. 1925(a) statement, Appellant presents in her brief the following question for our review:

1. Did the trial court abuse its discretion and commit reversible error when it held [Appellant] was bound to the terms of a stipulation concerning restitution to the alleged victim when such terms were ambiguous and subject to differing interpretations?

2. Did the trial court erroneously calculate the dollar amount of restitution owed the alleged victim by failing to consider dollar amounts shown on W-2 forms for years prior to the subject assault and by failing to consider that some medical expenses claimed by the victim were for services rendered after he returned to work?

Appellant's brief, at 7.

Appellant's first challenge to the imposition of restitution contends she effectively entered an unknowing and involuntary guilty plea because she

_____

of the order denying the motion by operation of law. **See** Pa.R.Crim.P. 720(A)(2)(b).

Here, the 120-day period for decision on Appellant's post-sentence motion expired on September 6, 2022. However, the clerk of courts failed to enter an order deeming the motion denied on that date. Instead, the trial court entered an order denying the post-sentence motion on September 27, 2022, outside the 120-day period, and Appellant appealed within 30 days of that order.

This Court has held that a court breakdown occurs when the trial court clerk fails to enter an order deeming post-sentence motions denied by operation of law pursuant to Pa.R.Crim.P. 720(B)(3)(c). **See Commonwealth v. Patterson**, 940 A.2d 493, 498-99 (Pa. Super. 2007) (citing **Commonwealth v. Perry**, 820 A.2d 734, 735 (Pa. Super. 2003)). Appellant's notice of appeal was filed within thirty days of the expiration of the 120-day period, and within thirty days of the trial court's September 27, 2022, order denying the post-sentence motions. Accordingly, we decline to quash the appeal and proceed to consider Appellant's substantive issues.

- 4 -

misconstrued what, she maintains, was an ambiguously worded stipulation about her obligation to pay restitution in her *pro rata* share of $23,334.00. The principles governing post-sentence motions to withdraw guilty pleas are as follows:

> It is well-settled that the decision whether to permit a defendant to withdraw a guilty plea is within the sound discretion of the trial court.[] ***Commonwealth v. Unangst***, 71 A.3d 1017, 1019 (Pa. Super. 2013) (quotation omitted); ***see Commonwealth v. Broaden***, 980 A.2d 124, 128 (Pa. Super. 2009) (noting that we review a trial court's order denying a motion to withdraw a guilty plea for an abuse of discretion), ***appeal denied***, 606 Pa. 644, 992 A.2d 885 (2010). Although no absolute right to withdraw a guilty plea exists in Pennsylvania, the standard applied differs depending on whether the defendant seeks to withdraw the plea before or after sentencing. When a defendant seeks to withdraw a plea after sentencing, he "must demonstrate prejudice on the order of manifest injustice." ***Commonwealth v. Yeomans***, 24 A.3d 1044, 1046 (Pa. Super. 2011). In ***Commonwealth v. Prendes***, 97 A.3d 337, 352 (Pa. Super. 2014), ***impliedly overruled on other grounds by Commonwealth v. Hvizda***, 632 Pa. 3, 116 A.3d 1103, 1106 (2015), we explained that a defendant may withdraw his guilty plea after sentencing "only where necessary to correct manifest injustice." ***Prendes***, 97 A.3d at 352 (citation omitted). Thus, "post-sentence motions for withdrawal are subject to higher scrutiny since the courts strive to discourage the entry of guilty pleas as sentence-testing devices." ***Commonwealth v. Flick***, 802 A.2d 620, 623 (Pa. Super. 2002).
>
> "Manifest injustice occurs when the plea is not tendered knowingly, intelligently, voluntarily, and understandingly." ***Commonwealth v. Kpou***, 153 A.3d 1020, 1023 (Pa. Super. 2016) (citation omitted). In determining whether a plea is valid, the court must examine the totality of circumstances surrounding the plea. ***Id***. "Pennsylvania law presumes a defendant who entered a guilty plea was aware of what he was doing, and the defendant bears the burden of proving otherwise." ***Id***.
>
> . . .

As stated, to be valid, a plea must be voluntary, knowing, and intelligent. ***Commonwealth v. Persinger***, 532 Pa. 317, 615 A.2d 1305, 1307 (1992). To ensure these requirements are met, Rule 590 of the Pennsylvania Rules of Criminal Procedure requires that a trial court conduct a separate inquiry of the defendant before accepting a guilty plea. It first requires that a guilty plea be offered in open court. The rule then provides a procedure to determine whether the plea is voluntarily, knowingly, and intelligently entered. As the Comment to Rule 590 provides, at a minimum, the trial court should ask questions to elicit the following information:

> (1) Does the defendant understand the nature of the charges to which he or she is pleading guilty or *nolo contendere*?

> (2) Is there a factual basis for the plea?

> (3) Does the defendant understand that he or she has the right to trial by jury?

> (4) Does the defendant understand that he or she is presumed innocent until found guilty?

> (5) ***Is the defendant aware of the permissible range or sentences and/or fines for the offenses charged***?

> (6) Is the defendant aware that the judge is not bound by the terms of any plea agreement tendered unless the judge accepts such agreement?

Pa.R.Crim.P. 590, Comment (Emphasis added).[] In ***Yeomans***, this Court explained:

In order for a guilty plea to be constitutionally valid, the guilty plea colloquy must affirmatively show that ***the defendant understood what the plea connoted and its consequences***. This determination is to be made by examining the totality of the circumstances surrounding the entry of the plea. Thus, even though there is an omission or defect in the guilty plea colloquy, a plea of guilty will not be deemed invalid if the circumstances surrounding the entry of the plea disclose that the defendant had

a full understanding of the nature and consequences of his plea and that he knowingly and voluntarily decided to enter the plea. *Yeomans*, 24 A.3d at 1047 (Pa. Super. 2011) (citing *Commonwealth v. Fluharty*, 632 A.2d 312, 314–15 (1993)).

*Commonwealth v. Hart*, 174 A.3d 660, 664-65, 667–68 (Pa. Super. 2017) (emphasis in original).

On the morning of Appellant's scheduled jury trial, the Commonwealth informed the trial court that Appellant had signed a counseled stipulation stating the Commonwealth would dismiss the first-degree felony aggravated assault and summary harassment charges against her in exchange for her agreement to plead guilty to simple assault—which carried a two-year probationary sentence—and to pay "restitution to the victim in her *pro rata* share of $23,344.85." Guilty Plea/Sentencing Hearing, 5/2/22, at 3-4. Defense counsel confirmed these were the terms of the stipulation and that he reviewed the guilty plea colloquy with Appellant and was present with her as she initialed and signed all pages. N.T. at 4.

The trial court conducted a thorough colloquy of Appellant, *see* pp. 4-17, after which it concluded she was entering a knowing, voluntary, and intelligent guilty plea. Returning to the issue of restitution, the trial court noted that Appellant's July 16, 2021, presentence investigation report prepared at her request identified the amount of restitution owed at $22,333.98. N.T. at 18. The Commonwealth advised the trial court, however, that over the ensuing eleven months the victim incurred additional related medical bills that brought Appellant's *pro rata* share to $23,334.85. *Id*.

The trial court also observed there had been an "oversight" when Appellant's initial PSI report had indicated that her listed restitution amount reflected the entire amount of restitution to be paid to the victim, when in fact, the trial court clarified, "this is really a *pro rata* share or one-half share because of the situation with Mr. Grande?", thus acknowledging that the amount represented a one-half share because Appellant was only one of two assailants. *Id*. Accordingly, when the trial court announced sentence at the conclusion of the hearing, it stated, without contemporaneous objection, "[Appellant] will pay restitution *pro rata* share in the amount of $23,344.85 to Nicola DiCostanzo." N.T. at 21.

On May 6, 2022, however, Appellant filed a timely counseled post-sentence motion challenging the voluntariness of her guilty plea with respect to the amount of the restitution ordered. Specifically, Appellant's motion maintained "that at all times prior to entry of the guilty plea and during sentencing in this matter, [she] was under the impression that she was to make restitution to the alleged victim of her pro rata share of a total of $23,344.85[,]" or, in other words, of only one-half of the total of $23,344.85.

The post-sentence motion also asserted that "[Appellant] does question the claimed dollar amount of unpaid medical charges sought by the alleged victim through restitution[,]" because the Commonwealth failed to produce unpaid medical bills or other statements substantiating the stated restitution amount prior to the presentation of the Stipulation. To that assertion, Appellant argued Appellant "always was covered by an excellent health

insurance plan through his Union employment[,] . . . it is also presently unknown to the [Appellant] what medical bills of the alleged victim were actually paid by his health insurance carrier[, and] . . . it is presently unknown to [Appellant] what secondary sources of income, if any, were paid out to and received by the alleged victim. . . ."

At the August 2, 2022, hearing on the post-sentence motion, defense counsel argued that the wording of the stipulation led him to believe that Appellant was responsible for "her proportionate share of a certain amount, $23,000. Prior to that being signed, I had not been supplied with any documentation evidencing the dollar amount of the claimed restitution. . . . It was only afterward that Attorney Gazo was courteous enough to advise me that [the] claimed total was actually $46,000 and that somehow the $23,000 would be my client's responsibility." Post-Sentence Motion Hearing, 8/2/22, at 4.

Addressing Appellant's claim that both the written stipulation and the trial court's subsequent plea colloquy contained an ambiguously expressed restitution obligation that rendered her plea involuntary, we examine the totality of circumstances evident in the record and perceive no manifest injustice with the trial court's denial of Appellant's post-sentence motion to withdraw her guilty plea. The stipulation in question, "As per prior PSI . . . Restitution to victim in *pro rata* share of $23,344.85" is not ambiguous. It states clearly that she must pay restitution **in** her share of $23,344.85. It does not say that she must pay her share of $23,344.85 restitution, which

would reduce the figure by half and is how she asks this Court to interpret the stipulation.

Furthermore, there was no indication of record that counsel and Appellant believed that the PSI report oddly withheld the exact dollar amount of her restitution obligation in favor of presenting an incomplete calculation that left it to them to figure out her obligation by dividing the specified amount by 2. Finally, their post-sentence and appellate argument becomes more unavailing still when one considers that the trial court concluded the guilty plea/sentencing hearing with a different plainly worded announcement that Appellant was to pay her *pro rata* share of restitution in the amount of $23,344.85, and neither counsel nor Appellant objected to or questioned the announcement in open court. Therefore, in light of this record and pertinent authority, we discern no reversible error with the trial court's conclusion that Appellant entered a knowing guilty plea with respect to the stated amount of her restitution obligation.

Appellant's second issue asserts that insufficient evidence supported the claimed restitution amount. Specifically, she charges the trial court with erroneously calculating the dollar amount of restitution owed the victim by failing to consider income shown on W-2 forms for years subsequent to the subject assault and by failing to consider that some medical expenses claimed by the victim were for services rendered after he returned to full-time employment. We disagree.

The following principles govern our review from a challenge to the imposition of restitution as part of a sentence:

"[T]he primary purpose of restitution is rehabilitation of the offender by impressing upon him that his criminal conduct caused the victim's loss or personal injury and that it is his responsibility to repair the loss or injury as far as possible." ***Commonwealth v. Solomon***, 247 A.3d 1163, 1170 (Pa. Super. 2021) (*en banc*) (internal citation and quotations omitted), *appeal denied*, 274 A.3d 1221 (Pa. 2022); ***see also*** 18 Pa.C.S.A. § 1106(c)(1) (requiring the court to order "full restitution ... so as to provide the victim with the fullest compensation for the loss"). . . . Challenges to a restitution order may go to the legality of the sentence, *i.e.*, the trial court's statutory authority to impose restitution under section 1106(c)(1), or the discretionary aspects of the sentence, *i.e.*, the trial court's determination of the amount of restitution. ***See Commonwealth v. Weir***, 239 A.3d 25, 38 (Pa. 2020).

A defendant's "discontent with the amount of restitution and the evidence supporting it is a challenge to the sentencing court's exercise of discretion" and constitutes a challenge to the discretionary aspects of the sentence. ***Id***. When a court imposes restitution as part of a sentence, "there must be a direct nexus between the restitution ordered and the crime for which the defendant was convicted." ***Solomon***, 247 A.3d at 1170 (internal citation and quotations omitted). To determine the correct amount of restitution, a court must use a "but-for" test: "damages which occur as a direct result of the crimes are those which would not have occurred but for the defendant's criminal conduct." ***Commonwealth v. Poplawski***, 158 A.3d 671, 674 (Pa. Super. 2017) (internal citation omitted).

***Commonwealth v. Wilcox***, 293 A.3d 605 (Pa. Super. 2023).

There is no dispute in this issue that Appellant participated in an assault that caused bodily injury to Mr. DiCostanzo necessitating medical expenses and resulting in lost wages, nor does Appellant contest that the trial court had the statutory authority to order full restitution to provide Mr. DiCostanzo with

complete compensation for his loss. **See** 18 Pa.C.S.A. § 1106(c)(1). Rather, Appellant challenges the amount of restitution imposed.

> It is well settled that a challenge to the discretionary aspects of a sentence does not entitle an appellant to review as of right. **See Commonwealth v. Moury**, 992 A.2d 162, 170 (Pa. Super. 2010). Rather, such a challenge must be considered a petition for permission to appeal. **See Commonwealth v. Christman**, 225 A.3d 1104, 1107 (Pa. Super. 2019). Before reaching the merits of a discretionary sentencing issue,
>
> > [w]e conduct a four-part analysis to determine: (1) whether [the] appellant has filed a timely notice of appeal, **see** Pa.R.A.P. 902 and 903; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence, **see** Pa.R.Crim.P. 720; (3) whether [the] appellant's brief has a fatal defect, [**see**] Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code, [**see**] 42 Pa.C.S.A. § 9781(b).

*Moury*, 992 A.2d at 170 (internal citation and brackets omitted).

**Wilcox**, 293 A.3d at 608.

While Appellant complies with the first two parts of the analysis, he fails to include in his appellate brief a Rule 2119(f) concise statement of reasons relied upon for allowance of appeal with respect to the discretionary aspects of sentence seeking permission. Nevertheless, we decline to find waiver, as the Commonwealth does not include in its one-paragraph argument denouncing this "frivolous" appeal an objection positing that Appellant has waived her challenge to the discretionary aspects of her sentence. We have held that "in the absence of any objection from the Commonwealth, we are empowered to review claims that otherwise fail to comply with Rule 2119(f)."

- 12 -

*Commonwealth v. Gould*, 912 A.2d 869, 872 (Pa. Super. 2006). *Accord Commonwealth v. Brougher*, 978 A.2d 373, 375 (Pa. Super. 2019).

Turning to the substance of Appellant's argument, she maintains that the trial court undertook an inadequate review of Mr. DiCostanzo's lost wages caused by the July 2019 assault. Among other evidence, the court considered W-2 forms which showed Mr. DiCostanzo's past earnings were $94,424.00 in 2017, N.T. at 37, $82,681.00 in 2018, N.T. at 41, and $45,791.20 from January 1, 2019 to July 11, 2019, the date of his attack, all of which were earned while working contractually guaranteed 40-hour work weeks for ADCO Electrical Corporation on a long-term construction project at Hudson Yards.

At the hearing on Appellant's post-sentence motion, however, Appellant underscored that after DiCostanzo had returned to full employment in February of 2020, his W-2 for that year showed eleven months of wages totaling $49,243.00, which extrapolates to an annual wage of only $53,720 for that year. She argues, therefore, that the "best evidence" of DiCostanzo's lost wages in 2019 due to injury included records of his wages earned from the date of his 2020 return to work to the August 2, 2022, restitution hearing, along with DiCostanzo's own testimony that his income was variable depending on the job he was working.

DiCostanzo testimony addressed explained that his 2020 earnings and beyond reflected the fact that he was no longer working the Hudson Yards site but had been assigned, instead to a different job operating under the union's standard 35-hour work week. N.T. at 21-22. Furthermore, DiCostanzo

- 13 -

explained that his 2018 annual earnings at the ADCO job were slightly reduced because it was his turn to participate in work sharing, a system in which his union required 10% of the workforce, (80 out of the 800 at the ADCO site) to be furloughed for eight weeks while other workers replaced them. N.T. at 16-17, 41-42. He testified his 2019 annual earnings would return to 2017 levels, as he had just started a "multimillion [dollar] job doing ten floors for Time Warner in Hudson Yards" working 40-hour weeks at his $52 hourly rate. N.T. at 18.

Yet, at the hearing on his post-sentence motion, Appellant expressed particular concern that Appellant had not submitted a W-2 from 2019, the year of his injury, showing what his earnings had been from January through July 11, 2019. He argued, "if the alleged victim came in today and showed us a W-2 from the year of injury that showed he only made this amount of money, that's demonstrative evidence and would bolster what he says in that regard, but we don't have that." N.T. at 45.

In response, the Commonwealth argued that DiCostanzo's unrefuted testimony was that for all of 2019 leading up to the July attack and injury, he was employed full-time, 40-hours per week at the contract rate of $52 per hour and was on course to earn between $90,000 and $100,000 for that calendar year. N.T. 17-22. Moreover, during a brief recess, DiCostanzo obtained his 2019 W-2 showing his six months' earnings of $45,791, N.T. at 54, which substantiated his testimony.

- 14 -

The Commonwealth also explained that it had arrived at its restitution request by averaging two W-2s from the previous two years of 2017 and 2018, in which he had worked the same 40-hour work weeks at $52 per hour, and had also experienced an eight week work sharing furlough in 2018, and the average annual earnings over those two years preceding 2019 was $88,388.94. To that figure, the Commonwealth explained, it had added the unpaid ambulance bill and several medical bills, divided that figure by 2 to reflect DiCostanzo's total six-month loss of $46,689.70, and divided that total by 2 to reflect Appellant *pro rata* share of $23,344.85. N.T. at 22-28.

Our review confirms that the trial court reached an appropriate amount of restitution based on DiCostanzo's earning history up to and including the year of his injury and his unreimbursed medical expenses and out-of-pocket costs. As the trial court explained in its Order of September 27, 2022, denying Appellant's post-sentence motion, Appellant's restitution amount of $23,344.85 pursuant to the stipulation in the written plea agreement was fact-based and slightly below one-half the amount of DiCostanzo's final tally of lost wages and unreimbursed costs:

> Based on our review of the testimony and evidence presented, we find that the record supports restitution in the amount of twenty-five thousand forty-six dollars and twenty-nine cents ($25,046.29). This sum is based on a thorough review of Mr. DiConstanzo's [sic] 2019 and 2020 W-2 forms, taking into account that he worked until he was injured on July 11, 2019, and that he did not return to his employment until February of 2020. Based upon the documentation introduced into evidence, Mr. DiConstanzo's [sic] total wage loss during this period was $48,042.47. In addition, unreimbursed medical expenses and

- 15 -

out-of-pocket costs totaled $2,050.10 for a combined total restitution figure of $50,092.57. Dividing that sum in half to arrive at [Appellant's] *pro rata* share yields a restitution amount of $25,046.29 which reflects the lost wages, unreimbursed medical expenses and out-of-pocket costs sought by Mr. DiCostanzo and sustained as a direct result of [Appellant's] criminal conduct in this matter.

The foregoing notwithstanding, we find that [Appellant] is responsible for restitution in the lesser amount of twenty-three thousand three hundred forty-four dollars and eighty-five cents ($23,334.85) as the agreed-upon sum in the parties' written stipulation. "A stipulation is a declaration that the fact agreed upon is proven, and a valid stipulation must be enforced according to its terms." **Commonweatlh v. Gvoko**, 243 A.3d 247, 249 (Pa. Super. 2020) (quoting **Commonweatlh v. Mitchell**, 902 A.2d 430, 460 (Pa. 2006)). "Moreover, when a plea is entered following negotiations, it is even more important that the terms of the agreement be followed." **Commonwealth v. Ortiz**, 854 A.2d 1280, 1283 (Pa. Super. 2004). The Superior Court has held that it is improper to modify the terms of restitution where the amount of additional restitution could have been ascertained and revealed to the trial court prior to sentencing, the restitution was part of a plea agreement and there was no change in circumstances. **See** [**Id.**] at 1284.

Trial Court Opinion at 7-8.

As we find the record supports the trial court's restitution sentence imposed in the case *sub judice*, we deny Appellant's second issue as meritless.

Judgment of sentence is affirmed.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary


Date: 8/29/2023