**COMMONWEALTH of Pennsylvania, Appellee,**

v.

**James FLICK, Appellant.**

Superior Court of Pennsylvania.

Submitted April 15, 2002.

Filed June 17, 2002.

Daniel C. Bell, Clearfield, for appellant.

Paul E. Cherry, Asst. Dist. Atty., Clearfield, for Commonwealth, appellee.

Before LALLY–GREEN, TODD and HESTER, JJ.

HESTER, Senior Judge.

¶ 1 James Flick appeals from the December 12, 2001 judgment of sentence of three to seven years imprisonment,[1] entered pursuant to Appellant's negotiated guilty plea to three counts of aggravated assault. Following the entry of Appellant's plea, but prior to the imposition of sentence, Appellant filed a motion to withdraw his plea wherein he asserted the trial court had failed to conduct an adequate oral colloquy as required by Pa. R.Crim.P. Rule 590, thereby precluding him from understanding and voluntarily

accepting the terms of the plea agreement. The court denied Appellant's motion. Approximately one month later, sentence was imposed. Based upon our review of the record, we are constrained to vacate the judgment of sentence and remand for proceedings consistent with this adjudication.

¶ 2 The record establishes the following.[2] On June 7, 2000, James Fleming was driving his black Chevrolet Camaro with his friends Jimmy Lamareaux and Mark Jacobson as passengers in the front and rear seats, respectively. As Mr. Fleming passed Appellant's residence, Appellant fired his Jennings model "Bryco 59" 9 mm handgun at the vehicle. The bullet lodged in the passenger door of the Camaro.

¶ 3 Pennsylvania State Trooper Steven Daniel was dispatched to investigate the shooting. Appellant voluntarily reported to the police station to resolve the matter. In his defense, Appellant, who admitted to firing a gun at the Camaro, claimed he was trying only to frighten its inhabitants, who were traveling back and forth in front of his house. Appellant was charged with three counts of attempted criminal homicide, three counts of aggravated assault, and three counts of recklessly endangering another person in connection with the incident.

¶ 4 On October 26, 2000, Appellant entered into a negotiated guilty plea to three counts of aggravated assault in return for a minimum term of incarceration of three years. The record reveals the court simultaneously conducted four colloquies of four

---

1. The court indicated that it would amend the sentence to be three-to-six years if it was determined that Appellant was eligible for boot camp. The record is silent as to whether that determination was made.

2. Preliminarily, we note that the underlying factual basis in this opinion was gleaned solely from the criminal complaint filed by the investigating state trooper since no facts were recorded at either the plea colloquy or the sentencing proceeding, and no summary was provided by the parties, the plea court, or the sentencing court.

separate defendants. With regard to Appellant's case, the court recited the pending charges and the terms of the plea agreement for the record. Neither the court nor Appellant's counsel explained the nature of the charges or informed Appellant of the elements of the crimes to which he was pleading guilty. Moreover, the Commonwealth failed to demonstrate that there was a factual basis for the plea.

¶ 5 The written waiver form, a two-sided document to which the court referred in its oral colloquy, consisted of eight basic sentences. The court asked Appellant whether he had read the terms of the plea agreement, signed it, discussed it with his attorney, understood it, and whether he had initialed each of the numbered paragraphs on the written waiver form and inquired as to whether Appellant had discussed the "waiver of [his] rights" with his attorney. N.T. Plea Colloquy, 10/26/00, at 6. The court, however, failed to *explain* all of those rights to Appellant. In addition, the court directed Appellant to look at "the back of the form" and asked Appellant whether he understood the "various charges that [were] filed against [him], and the section numbers and the possible maximum period of incarceration and fines[.]" *Id.* However, neither the trial court nor the written form provided an explanation of the nature of the charges nor the *maximum* possible period of incarceration for which Appellant may have been sentenced under the plea agreement. The document indicated only that Appellant was pleading guilty to three counts of aggravated assault and a maximum possible sentence

that could be imposed.[3] Appellant, himself, felt compelled to denote, on the form and in his own handwriting, that he was entering the guilty plea subject to a negotiated plea agreement, since language in the form provided the signor to acknowledge only that he had "not received any promise of the sentence [he would] receive in return for entering a plea." Written Colloquy, 10/27/00, ¶ 9 at 2. Finally, the court instructed Appellant that his post-plea appeal rights would be limited to challenges to the legality of the sentence imposed and voluntariness of the plea entered. The document is not dated, but a time stamp indicates that it was filed on October 27, 2000.

¶ 6 On November 7, 2000, Appellant filed a pre-sentence motion to withdraw his guilty plea, which was denied on November 14, 2000. The record is silent as to the court's reasoning for rejecting Appellant's petition. Appellant was sentenced to three to seven years imprisonment on December 12, 2000. This timely appeal was filed on January 12, 2001.[4]

¶ 7 Appellant presents one issue for review. Appellant argues his guilty plea was unknowing and therefore, invalid since the plea colloquy was not sufficient so as to satisfy the requirements of Pa.R.Crim.P. Rule 590. Appellant contends the colloquy was deficient since it did not elicit the minimum information required by Rule 590. Specifically, Appellant was not informed as to the nature of the charges against him, not informed he was innocent until proven guilty, not informed as to the permissible range of sentences for the of-

---

3. While obviously not clear, we presume that the seventy years indicated on the written colloquy would be the maximum possible sentence that could have been imposed pursuant to an open plea.

4. The judgment of sentence was entered on the docket on December 13, 2001. Therefore,

this appeal was filed within thirty days. *See* Pa.R.A.P. Rule 903 (thirty-day appeal period does not commence until order is entered by trial court; trial court's order is not "entered" until it has been entered by prothonotary on docket and notice of order's entry has been given to parties by prothonotary).

fenses charged, and not informed that the judge was not bound by the terms of any plea agreement unless the judge accepted it. We find merit to Appellant's contention.

■ ¶ 8 We have held that the entry of a guilty plea results in the waiver of all defects and defenses, except for those that challenge the jurisdiction of the court, the validity of the guilty plea, or the legality of the sentence. *Commonwealth v. Syno*, 791 A.2d 363, 365 (Pa.Super.2002). Herein, Appellant clearly challenges the validity of his plea colloquy in this direct appeal.[5]

■ ¶ 9 Two different standards exist for reviewing requests to withdraw a guilty plea, one for pre-sentence requests to withdraw and one for post-sentence requests to withdraw. In *Commonwealth v. Forbes*, 450 Pa. 185, 299 A.2d 268 (1973), our Supreme Court set forth the standards for determining when, as here, a request to withdraw a guilty plea made prior to sentencing should be granted. The Court began by stating that "although there is no absolute right to withdraw a guilty plea, properly received by the trial court, it is clear that a request made before sentencing ... should be liberally allowed." *Id.* at 271. The Court then fashioned a test to apply in determining whether to grant a pre-sentence motion for withdrawal of a guilty plea: "the test to be applied by the trial courts is fairness and justice." *Id.* Specifically, if the trial court finds "any fair and just reason," withdrawal of the plea before sentencing should be freely permitted, unless the prosecution proffered a showing that it had been "substan-

tially prejudiced." *Id.* Since entry of the plea involves the simultaneous waiver of so many constitutional rights, a request to withdraw prior to sentencing must be liberally allowed. *Commonwealth v. McLaughlin*, 469 Pa. 407, 366 A.2d 238 (1976). Conversely, post-sentence motions for withdrawal are subject to higher scrutiny since courts strive to discourage entry of guilty pleas as sentence-testing devices. Therefore, a showing of manifest injustice is required to withdraw guilty pleas after imposition of sentence. *Commonwealth v. Gunter*, 565 Pa. 79, 771 A.2d 767 (2001).

¶ 10 In applying the "Forbes test," our Supreme Court has been quick to reverse decisions by our Court that deviate from this liberal standard. In *Commonwealth v. Randolph*, 553 Pa. 224, 718 A.2d 1242 (1998), a defendant, who confessed to police about his participation in numerous burglaries, entered open pleas of guilty to all the charged crimes. The trial court conducted a sufficient on-the-record colloquy. Furthermore, it informed the defendant that any attempt to withdraw a guilty plea should be done before sentencing since any attempt to withdraw a guilty plea after sentencing would be severely limited. Prior to sentencing, Randolph informed the court that he wished to withdraw his guilty plea. Randolph indicated that he was under duress at the time of his confession and that counsel had pressured him to plead guilty. The sentencing court denied the request, concluding that Randolph had professed to the voluntariness of his plea during the colloquy. This Court, which affirmed the sentencing court's denial of Randolph's pre-sentence withdrawal

---

**5.** The Commonwealth urges us to waive Appellant's claim, arguing that the only citation to authority he provides is a reference to a memorandum case wherein we determined this oral colloquy in use by the Clearfield County Court of Common Pleas was defective since it failed to advise the defendant in ac-

cord with Pa.R.Crim.P. Rule 590. We conclude that Appellant's citation to Rule 590 is sufficient to promote understanding of his claim so as to effect purposeful appellate review. *See Commonwealth v. Luktisch,* 451 Pa.Super. 500, 680 A.2d 877 (1996).

request, was admonished by our Supreme Court for failing to follow the pronouncement in *Forbes* and the dictates of our highest Court.

¶ 11 Mr. Justice Zappala, writing for the Court and applying the test in *Forbes*, noted that while the colloquy was sufficient, the defendant's assertion that he pled guilty under duress was sufficient to satisfy the liberal standard pronounced in *Forbes*, in light of the fact there was not even the slightest suggestion that the Commonwealth would be substantially prejudiced by its reliance upon the defendant's plea. In fact, the Court noted that there was *no* assertion that the Commonwealth would suffer prejudice if Randolph's request were permitted.

¶ 12 This Court, [in *Commonwealth v. Muhammad,* 2002 PA Super 55], 794 A.2d 378 recently reiterated the standards for determining when a pre-sentencing request to withdraw a guilty plea should be granted. Specifically, we found that presentence motions to withdraw guilty pleas should be liberally granted where the defendant has provided fair and just reasons for withdrawal and there is no finding that the Commonwealth will be substantially prejudiced by bringing the case to trial. *Id.* Pa.R.Crim.P Rule 320 states that "[a]t any time *before* sentence, the court may, in its discretion, permit or direct a plea of guilty to be withdrawn and a plea of not guilty substituted."

¶ 13 Pa.R.Crim.P Rule 590, which sets forth six *mandatory* areas of inquiry that must be conducted during a plea colloquy in order to determine whether a judge should accept a guilty plea, was in effect at the time of Appellant's plea. The colloquy, which is designed to demonstrate the defendant's understanding of the proceeding, must inquire into the following areas: (1) the nature of the charges; (2) the factual basis of the plea; (3) the right to trial by jury; (4) the presumption of innocence; (5) the permissible range of sentences; and (6) the judge's authority to depart from any recommended sentence.

■ ¶ 14 The colloquy in the instant case clearly is deficient when evaluated against these inquiries. At no time did the sentencing court explain the nature of the charges against Appellant nor discuss the elements of the offenses. We find the question, "Are you familiar with the nature of the various charges to which you've agreed to plead guilty?" [N.T. Plea Colloquy, 10/26/00, at 6], cannot be construed to satisfy this requirement. Further, the sentencing court failed to conduct *any* inquiry into the existence of a factual basis for the plea. Moreover, we note that the simultaneous colloquy of four separate defendants in four separate cases with four different sets of charges hardly could be considered appropriate considering the importance of the rights the individuals were waiving. This colloquy falls far short of comporting with the requirements enumerated by our Supreme Court, stressing the necessity for a colloquy which complies with Rule 590, thereby insuring that all pleas are voluntarily and intelligently entered. Moreover, since there was absolutely no assertion by the Commonwealth that it would be substantially prejudiced by Appellant's pre-sentence withdrawal, we find the court abused its discretion in denying Appellant's request.

¶ 15 Accordingly, having concluded that the guilty plea colloquy in the instant case was inadequate, and thus rendering it unknowing, we are constrained to vacate the judgment of sentence and remand for proceedings not inconsistent with this adjudication. Appellant shall be permitted to withdraw his guilty plea.

¶ 16 Judgment of sentence vacated; case remanded for proceedings not inconsistent

with this opinion. Jurisdiction relinquished.