J-S05036-26
J-S05037-26

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| LEGIOUS ROBERT MINDER, JR. | : | |
| | : | |
| Appellant | : | No. 3059 EDA 2024 |

Appeal from the Judgment of Sentence Entered October 14, 2024
In the Court of Common Pleas of Lehigh County Criminal Division at
No(s): CP-39-CR-0001798-2019

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| LEGIOUS ROBERT MINDER, JR. | : | |
| | : | |
| Appellant | : | No. 3060 EDA 2024 |

Appeal from the Judgment of Sentence Entered October 14, 2024
In the Court of Common Pleas of Lehigh County Criminal Division at
No(s): CP-39-CR-0003575-2020

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| LEGIOUS ROBERT MINDER | : | |
| | : | |
| Appellant | : | No. 800 EDA 2025 |

Appeal from the Judgment of Sentence Entered October 14, 2024
In the Court of Common Pleas of Lehigh County Criminal Division at
No(s): CP-39-CR-0003504-2022

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |

J-S05036-26
J-S05037-26

:
v.                                          :
                                            :
                                            :
                                            :
LEGIOUS ROBERT MINDER                       :
                                            :
         Appellant                          :       No. 801 EDA 2025

Appeal from the Judgment of Sentence Entered October 14, 2024
In the Court of Common Pleas of Lehigh County Criminal Division at
No(s):  CP-39-CR-0004223-2022

COMMONWEALTH OF PENNSYLVANIA    :    IN THE SUPERIOR COURT OF
                                :             PENNSYLVANIA
                                :
v.                              :
                                :
                                :
                                :
LEGIOUS ROBERT MINDER           :
                                :
         Appellant             :       No. 802 EDA 2025

Appeal from the Judgment of Sentence Entered October 14, 2024
In the Court of Common Pleas of Lehigh County Criminal Division at
No(s):  CP-39-CR-0001310-2023

COMMONWEALTH OF PENNSYLVANIA    :    IN THE SUPERIOR COURT OF
                                :             PENNSYLVANIA
                                :
                                :
v.                              :
                                :
                                :
                                :
LEGIOUS ROBERT MINDER           :
                                :
         Appellant             :       No. 803 EDA 2025

Appeal from the Judgment of Sentence Entered October 14, 2024
In the Court of Common Pleas of Lehigh County Criminal Division at
No(s):  CP-39-CR-0001978-2023


BEFORE:   PANELLA, P.J.E., KING, J., and FORD ELLIOTT, P.J.E.*

_____

* Retired Senior Judge assigned to the Superior Court.

- 2 -

J-S05036-26
J-S05037-26

MEMORANDUM BY FORD ELLIOTT, P.J.E.:          **FILED JUNE 22, 2026**

Appellant, separately referred to in the captions for these appeals as Legious Robert Minder and Legious Robert Minder, Jr.,[1] appeals from the judgments of sentence entered by the Court of Common Pleas of Lehigh County after he entered negotiated guilty pleas to offenses in four criminal matters and the plea court revoked his parole in two other criminal matters on the basis that his guilty plea convictions constituted direct violations of parole. Appellant challenges the denial of his post-sentence motion to withdraw his guilty pleas and argues that a grant of relief on his plea withdrawal claim would also require us to vacate his parole revocation sentences. Upon review, we affirm.

Appellant accepted the following summary of the facts concerning the four matters resolved by his global plea agreement:

### CP-39-CR-0001978-2023

[Appellant] had been friends for some time with Xavier Grenon and Frederick Marks. Beginning as far back as 2018, Grenon had a robbery case in which his co-defendant was Bless Jones. At that point in time, Grenon believed that Jones had given a statement to the police that caused Grenon to be arrested for the robbery.

[] Grenon had left his palm print on the victim's car and was identified in a photo[graphic] array by the victim. And that's what led to Grenon's arrest. However, Grenon had this belief that it was Jones who had … snitched on him.

…

_____

[1] The cover of Appellant's brief also identifies him under a third variant name as "Legious Robert Minder III." *See* Appellant's Brief, Cover.

- 3 -

[] Grenon … refer[red] to Jones as a rat and there [were] problems back and forth between [them].  [Appellant] became embroiled in this on the side of Grenon.  On [August 31, 2022], as it had [happened] many times over the years leading up to 2022, Jones and Grenon were engaged in a back and forth about the name calling of being called a rat by Jones, and Grenon being upset that in fact Jones had given this statement.  And there were various threats back and forth …

However, … on August 31st, as Grenon was with Marks and [Appellant], Grenon became angry, and he decided that it was time to do something about Jones.  And a video surveillance system at Grenon's home on Shiloh Court in Whitehall captured the three defendants together, and it captured Grenon saying that they were going to go shoot up Jones' mother's house, and it captured [Appellant] saying, ["]I'll do it.["]

[Appellant] also heard Grenon say[, "W]e're about to kill the rat that snitched on me bro,["] and that was picked up on the video surveillance system as well.  Grenon had said he didn't want his name caught up in the investigation, and that is why [Appellant] agreed to carry out the shooting instead of Grenon.

[Appellant] was equipped with a 9[-]millimeter [G]lock.  That [G]lock had an attachment called a switch that made it operate in a fully[ ]automatic manner.  The switch was on the gun at that time, and[,] in fact, [Appellant] was asking Grenon to retrieve the piece that ordinarily would be on the back of the gun, and Grenon didn't want to get it and said, ["D]o you really need it?[" Appellant] said, ["]I don't need it now.  I'll need it afterwards.["]

[T]hey got into [Appellant's] vehicle, a Jeep Cherokee, driven by Marks.  Marks was armed with a 40[-]caliber gun, [Appellant was] with his 9[-]millimeter [G]lock switch [handgun], and Grenon [was] with them.  They headed out with a plan to meet up with Jones somewhere on the south side of Allentown at Trout Creek Park, but instead, they pulled over in[to] a spot that Jones would have to pass either [if he was] coming to his home or leaving his home to go to Trout Creek Park, and they laid in wait.

As Jones approached an intersection, he stopped at a stop sign, continued through the stop sign never knowing that[,] on his left[,] lurked [Appellant,] Grenon[,] and Marks in the Jeep.  As he

was passing the car, Grenon messaged Jones and said, ["I]s that you?["]  Jones stopped, his phone had lit up, and[,] as soon as he tapped the brakes on his car, gun fire erupted.

Marks fired three shots from the 40[-]caliber.  [Appellant] exited the passenger seat of his own Jeep, went around the rear of the vehicle, and fired th[e] fully-automatic operating 9[-]millimeter [G]lock repeatedly at the Honda containing Jones but also containing Najeer Lane in the passenger seat.

…

[A projectile] entered the rear of the [Honda], fired by [Appellant], went through the trunk, through the backseat, through the armrest, through the passenger seat, struck Lane in his back, [and] traveled upwards causing severe internal damage that led [Lane] to bleed to death internally.  Lane, having been struck, jumped out of the car and fled for his life.

Jones continued driving the vehicle away and returned to his house.  He took steps there to hide his vehicle with the gunshots to it and the blown[-]out windows.  He ran into his house, exclaimed to everybody that he had been shot at, [and] that Lane was missing. … [Appellant] and his co-defendants returned to Grenon's house on Shiloh Court.

Shortly thereafter, they decided to go back and see if they had hit Jones.  They went back armed.  They went back in a different vehicle.  They parked a distance away, and Grenon got out on foot, equipped now with a 40[-]caliber handgun that had previously been utilized by Marks, and Grenon crept down the alley and opened fire as soon as he saw Jones getting out of a vehicle in [a] backyard on South Plum Street.

…

[A] bullet traveled directly through the windshield of the driver's side window [of the car near Jones].

[Tyrone] Boyd was in the backyard.  [He was] the stepfather of Jones.  He provided his body to cover Jones and ushered him inside but was nearly struck himself.  While eight casings were found discharged on Plum Street, a total of twelve shots can be heard on audio from surrounding cameras.

…

Grenon returned to the vehicle, and all three of them returned to Whitehall to that Shiloh Court address.  Meanwhile, neighbors called in that second round of shooting … to the Allentown Police.

The Allentown [p]olice responded, and they located in the area of 10th and Juniata Streets, … a number of spent casings in that intersection, and in talking to neighbors and reviewing video, learned that there had not only been that shooting that they had been called about, but that … 45 minutes before, there had been a shooting at this intersection.

And [the police] were able to get the video of the actual shooting, and[,] in reviewing the path of the casings and finding broken glass in the street, they began searching for potential victims of the gunfire, and that is how Lane was located hiding behind -- he had taken cover behind the vehicle and appear[ed] to have collapsed there.

…

Officer Pfeiffer of the Allentown Police Department tried life-saving measures [and cardio pulmonary resuscitation], [and emergency medical services were] called, but[,] unfortunately, Lane had already succumbed to his injuries.  That was ruled a homicide by Dr. Crystal Magno of the Forensic Pathology Associates, and the manner of death was homicide[,] and the cause was the gunshot wound.

…

**CP-39-CR-0001310-2023**

[O]n June 21[,] 2022, [Appellant] and his co-defendants in that case, Marks and Joshua Colon, … went to the 200 block of … East Hickory Street.  They actually parked several blocks away, crept through some alleys, and each of them [was] armed with a handgun.  The target was another gang member who they had difficulties with, Nashire Bradley[.]  They crept up the street, and when they saw Bradley outside, they opened fire, all three of them.  Bradley fired back.

One of the bullets fired by one of the co-defendants or [Appellant], it's unknown which one, struck an individual who was enjoying charcuterie on his porch. The bullet struck his chair and his ankle. He was out of work for months. That victim, Danny Hanna, suffered, fortunately, survivable injuries but was just trying to enjoy the evening when this gunfire erupted between [Appellant], his co-defendants in that matter, and Bradley.

…

The police located 17 spent shell casings at the intersection of East Hickory and South Carlisle Streets…. There were also three spent shell casings located on South Carlisle Street headed in the direction of the 800 block of East Union Street[,] making the total rounds fired from this area 20.

There had been an individual who was returning from dinner at her family's house with her nine-year-old daughter. She was outside [with the nine-year-old] when the gunfire erupted[.] The nine-year-old began screaming in terror. The mother tried to cover her, and the three individuals ran by with firearms. Two of them touched [a] car as they went by, and the police were able to recover the fingerprints of [Appellant] and Marks on that vehicle. They had no basis to be in that area nor around that car which belonged to the woman with the nine-year-old daughter.

…

[A 40-caliber firearm used in this shooting] was the same 40[-]caliber [firearm] that was utilized in the shooting [at] 10th and Juniata [Streets] and at Plum Street as well.

…

**CP-39-CR-0003504-2022**

[Appellant] had, on March 19[,] 2022, practiced using his 9[-]millimeter [G]lock equipped with a switch [in the area of Constitution Drive in Allentown, Lehigh County,] and instructed a Commonwealth witness to videotape that. That videotape was seen on his cell phone which was recovered incident to his arrest on multiple warrants by the probation department, and then a search warrant was served for the phone, and the video was recovered. He also had shown that video to Marks and the

Commonwealth witness. [It showed] him utilizing the gun equipped with the switch to make it fully[ ]automatic. This [wa]s approximately five months before the [killing of Lane].

…

## CP-39-CR-0004223-2022

[On September 6, 2022,] Officers [Robert] Taylor and [Jeremy] Rimmer of the Bethlehem Police Department were in the area of the 400 block of West North Street, which was the home of [Appellant's mother], and where [Appellant] had been seen many times operating his silver Jeep Cherokee. When the police arrived, they parked their patrol vehicle next to the driver['s] side of the Jeep as they saw that parked there. They were attempting to block [Appellant] from exiting the parking spot and fleeing[.] They exited the[ir] vehicle and began giving loud, clear commands for [Appellant] to roll the window down.

They … oberserve[d that Appellant] had been inside [the Jeep], and they were in a marked patrol vehicle in full uniform with their pistols drawn, and then they heard the Jeep's engine rev, and [Appellant] pulled out of the parking spot and continued at a high rate of speed … on West North Street, eventually travel[ing] on 3rd Avenue, and then [s]outh on [Pennsylvania Route] 378. It was raining and [there existed] hazardous conditions. [Appellant] was traveling at a very high speed. He reached speeds of up to 100 miles per hour, but they did not engage in a [continued] pursuit for safety[.]

N.T. Guilty Plea/Sentencing Hearing, 10/14/24, 37-48 (some first names and name titles omitted; case headings added).

### Cases 3504-2022, 4223-2022, 1310-2023, and 1978-2023

On October 14, 2024, Appellant – then twenty-years of age – entered negotiated guilty pleas to resolve his pending criminal charges at CP-39-CR-0003504-2022, CP-39-CR-0004223-2022, CP-39-CR-0001310-2023, and CR-0001978-2023. *See* N.T. Guilty Plea/Sentencing Hearing, 10/14/24, 20-21. On that day, the parties were scheduled to empanel a jury to sit for a trial in

the case at CP-39-CR-0001978-2023. *See id.* at 14. Pursuant to his plea agreement, Appellant pleaded guilty to: (1) murder of the third degree (killing of Lane), attempted murder (shooting at Jones), criminal conspiracy (plot to kill Jones at 10th and West Juniata Streets), aggravated assault – attempt to cause serious bodily injury (accomplice liability for Grenon's shooting at Jones and Boyd on Plum Street), and possession of a firearm by a prohibited person at CP-39-CR-0001978-2023,[2] *see id.* at 15-17; (2) aggravated assault – attempt to cause serious bodily injury (shooting that injured Hanna) at CP-39-CR-0001310-2023,[3] *see id.* at 17; (3) possession of a firearm by a prohibited person at CP-39-CR-0003504-2022,[4] *see id.* at 17-18; and (4) flight to avoid apprehension or punishment at CP-39-CR-0004223-2022,[5] *see id.* at 18.

In exchange for the guilty pleas, the Commonwealth agreed to recommend an aggregate sentencing scheme with a minimum term of forty years' imprisonment and the maximum term left to the discretion of the sentencing court. *See* N.T. Guilty Plea/Sentencing Hearing, 10/14/24, 18. The parties also agreed that the convictions encompassed by Appellant's global guilty plea settlement would constitute direct violations of parole

---

[2] 18 Pa.C.S. §§ 2502(c), 901(a)/2502(a), 903(a)/2501(a), 2702(a)(1), and 6105(a)(1), respectively.

[3] 18 Pa.C.S. § 2702(a)(1).

[4] 18 Pa.C.S. § 6105(a)(1).

[5] 18 Pa.C.S. § 5126(a).

- 9 -

Appellant had been serving at CP-39-CR-0001798-2019 and CP-39-CR-0003575-2020. *See id.* As part of the global plea agreement, "the probation department would be recommending concurrent county [imprisonment] sentences" with respect to the parole violations in those cases. *Id.* Additional charges in Cases 1978-2023, 1310-2023, and 4223-2022 were also withdrawn pursuant to the negotiated plea agreement. *See id.* at 24-25.

The court accepted the pleas and immediately proceeded to sentencing after Appellant waived any request for a pre-sentence investigation report. *See* Guilty Plea/Sentencing Hearing, 10/14/24, 50-52. The court accepted the negotiated sentencing recommendation, imposing an aggregate term of forty to eighty years' imprisonment for the convictions at CP-39-CR-0001978-2023, a concurrent five-to-ten-year imprisonment term at CP-39-CR-0003504-2022, a concurrent six-to-twelve-year imprisonment term at CP-39-CR-1310-2023, and a concurrent one-to-two-year imprisonment term at CP-39-CR-0004223-2022.[6] *See id.* at 67-71.

_____

[6] The court ordered Appellant to pay restitution in the amounts of: $10,000.00, in connection with the third-degree murder conviction at CP-39-CR-0001978-2023, *see* Guilty Plea/Sentencing Hearing, 10/14/24, 69; $1,898.85, in connection with the aggravated assault – attempt to cause serious bodily injury conviction at CP-39-CR-0001310-2023, *see id.* at 70; and $12,791.87 for the Victim's Compensation Assistance Program, *see id.* The court noted that "the restitution in both instances shall be joint and several with [Appellant's] co-defendants." *Id.* at 70. The court also ordered Appellant to have no contact with victim Jones or his family. *See id.* at 71.

## **Case 1798-2019 (Parole Revocation)**

On August 16, 2019, Appellant entered a guilty plea to robbery,[7] and the plea court sentenced him to eleven-and-one-half to twenty-three months' imprisonment, to be followed by three years' probation.  **See** Guilty Plea Colloquy, 8/16/19 (CP-39-0001798-2019); Order (sentencing), 8/16/19 (CP-39-CR-0001798-2019).  The plea court granted Appellant immediate parole on April 2, 2020.  **See** Order (early parole motion granted), 12/3/19, 1 (CP-39-0001798-2019); Order (immediate parole granted), 4/2/20, 1 (CP-39-0001798-2019).  A violation warrant notice entered into the record by Appellant's probation officer on September 30, 2020, indicated that Appellant's imprisonment term would have ended on July 11, 2021, and his probation term was scheduled to end on July 11, 2024.  **See** Probation/Parole Intermediate Punishment Violation Warrant, 9/30/20, 1 (CP-39-0001798-2019).

On February 11, 2021, prior to the commission of the offenses in Cases 3504-2022, 4223-2022, 1310-2023, and 1978-2023, the plea court revoked Appellant's parole in Case 1798-2019, and ordered him to serve his remaining backtime, to be followed by three years' probation.  **See** Order (parole violation), 2/11/21, 1 (CP-39-0001798-2019).  The court again granted parole on July 15, 2021.  **See** Order, 7/15/21, 1 (immediate parole granted) (CP-39-0001798-2019).  According to violation warrant notices entered into the

---

[7] 18 Pa.C.S. § 3701(a)(1)(iv).

record by Appellant's probation officer, after he was arrested for retail theft related offenses on November 21, 2021, his backtime imprisonment term had a "maximum date" of May 21, 2022. *See* Probation/Parol Intermediate Punishment Violation Warrant, 12/21/21, 1 (CP-39-CR-0001798-2019). Revocation proceedings were continued in Case 1798-2019 until the time that Appellant entered his guilty pleas in Cases 3504-2022, 4223-2022, 1310-2023, and 1978-2023. *See* Order (parole violation continuance), 12/12/22, 1 (CP-39-CR-0001798-2019).

### Case 3575-2020 (Parole Revocation)

On January 20, 2021, Appellant entered a guilty plea to possession of a controlled substance with intent to deliver at CP-39-CR-0003575-2020,[8] and was sentenced in that matter to time served to twenty-three months' imprisonment. *See* Guilty Plea Colloquy, 1/20/21 (CP-39-CR-0003575-2020); Order (sentencing), 1/20/21, 1 (CP-39-CR-0003575-2020). On February 9, 2021, the court granted immediate parole. *See* Order (immediate parole granted), 2/9/21, 1 (CP-39-CR-0003575-2020). A probation/parole violation warrant notice entered into the record by Appellant's probation officer after he was arrested for retail theft related offenses on November 21, 2021, reflected that Appellant's sentence had a maximum date of August 24, 2022. *See* Probation/Parol Intermediate Punishment Violation Warrant, 12/21/21, 1 (CP-39-CR-0003575-2020). Revocation proceedings were

_____

[8] 35 P.S. 780-113(a)(30).

continued in Case 3575-2020 until the time Appellant entered his guilty pleas in Cases 3504-2022, 4223-2022, 1310-2023, and 1978-2023. **See** Order (parole violation continuance), 12/7/22, 1 (CP-39-CR-000-3575-2020).

**Revocation Proceedings in Cases 1798-2019 and 3575-2020**

On October 14, 2024, after the plea court imposed the negotiated sentence for Cases 3504-2022, 4223-2022, 1310-2023, and 1978-2023, Appellant's counsel waived a **Gagnon I**[9] hearing for Cases 1798-2019 and 3575-2020, conceding that the new convictions resulting from the guilty pleas on that date constituted violations of parole. **See** Guilty Plea/Sentencing Hearing, 10/14/24, 72. The court revoked Appellant's parole in both cases, and imposed backtime sentences to be served concurrently with the aggregate sentencing scheme set forth in Cases 3504-2022, 4223-2022, 1310-2023, and 1978-2023, and agreed to not reinstate the three-year probation term at Case

---

[9] This Court has explained:

> In **Gagnon v. Scarpelli**, 411 U.S. 778 (1973), the United States Supreme Court held that a defendant accused of violating the terms of his probation is entitled to two hearings prior to formal revocation and re-sentencing.
>
> When a parolee or probationer is detained pending a revocation hearing, due process requires a determination at a pre-revocation hearing, a **Gagnon I** hearing, that probable cause exists to believe that a violation has been committed. Where a finding of probable cause is made, a second, more comprehensive hearing, a **Gagnon II** hearing, is required before a final revocation decision can be made.

**Commonwealth v. Heilman**, 876 A.2d 1021, 1026 (Pa. Super. 2005) (citation omitted; cleaned up).

- 13 -

1798-2019. *See id.* at 73-74; Order (parole revocation and imposition of backtime), 10/14/24, 1 (CP-39-CR-0001798-2019); Order (parole revocation and imposition of backtime), 10/14/24, 1 (CP-39-CR-0003575-2020).

### Post-Sentence Procedural History

On October 18, 2024, Appellant filed post-sentence motions in each of the underlying cases. In Cases 3504-2022, 4223-2022, 1310-2023, and 1978-2023, he filed a motion to withdraw his guilty pleas, in which counsel asserted, "Among the allegations that [Appellant] claims create a manifest injustice entitling him to withdraw his negotiated plea[s] are accusations that present counsel was ineffective." Motion to Withdraw to Withdraw Guilty Plea, 10/18/24, ¶ 7 (CP-39-CR-0003504-2022, CP-39-CR-0004223-2022, CP-39-CR-0001978-2023, and CP-39-CR-0001310-2023). In Cases 1798-2019 and 3575-2020, he filed a motion to vacate *Gagnon II* sentences in light of his motions to withdraw his guilty pleas in Cases 3504-2022, 4223-2022, 1310-2023, and 1978-2023. *See* Motion to Vacate Gagnon II Sentence, 10/18/24, ¶¶ 7-10. In all of the cases on appeal, Appellant's counsel also filed a motion to withdraw from representation, acknowledging Appellant's assertion of ineffective assistance and requesting the appointment of new counsel. *See* Motion to Withdraw as Counsel, 10/18/24, ¶¶ 7-10 (CP-39-CR-1798-2019, CP-39-CR-3575-2020, CP-39-CR-0003504-2022, CP-39-CR-0004223-2022, CP-39-CR-0001978-2023, and CP-39-CR-0001310-2023).

Before the court could rule on the post-sentence motions, Appellant timely filed notices of appeal in the parole revocation cases where the filing of

the post-sentence motions did not toll the thirty-day deadline for filing the notices. *See* Notice of Appeal, 11/13/24, 1 (CP-39-CR-0001798-2019 and CP-39-CR-0003575-2020); Pa.R.Crim.P. 708(E) ("The filing of a motion to modify sentence [in a revocation proceeding] will not toll the 30-day appeal period."). The plea court subsequently ordered a hearing on the post-sentence motions filed in all of the instant cases including the two parole revocation matters. *See* Order (post-sentence motion hearing scheduled), 11/22/24, 1 (CP-39-CR-1798-2019, CP-39-CR-3575-2020, CP-39-CR-0003504-2022, CP-39-CR-0004223-2022, CP-39-CR-0001310-2023, and CP-39-CR-0001978-2023). Before that hearing was held, the plea court granted the motion for the withdrawal of counsel and appointed present counsel. *See* Order (withdrawal and appointment of counsel), 11/26/24, 1 (CP-39-CR-1798-2019, CP-39-CR-3575-2020, CP-39-CR-0003504-2022, CP-39-CR-0004223-2022, CP-39-CR-0001310-2023, and CP-39-CR-0001978-2023).

Before the post-sentence motion hearing was held, the Commonwealth filed a motion requesting a more specific pleading as to Appellant's grounds for requesting the withdrawal of the guilty pleas entered on October 14, 2024, which the plea court granted. *See* Commonwealth Motion for a More Specific Pleading, 12/30/24, 1-2 (CP-39-CR-0003504-2022, CP-39-CR-0004223-2022, CP-39-CR-0001310-2023, and CP-39-CR-0001978-2023); Order (granting motion for more specific pleading and ordering the filing of an amended motion to withdraw guilty plea), 1/8/25, 1 (CP-39-CR-1798-2019, CP-39-CR-3575-2020, CP-39-CR-0003504-2022, CP-39-CR-0004223-2022,

- 15 -

CP-39-CR-0001310-2023, and CP-39-CR-0001978-2023). On January 28, 2025, Appellant, via counsel, filed an amended plea withdrawal motion in which he asserted that he "was of the belief that his post-senten[ce] motion rights would both permit for the substitution of counsel, [and] provide [him] with the opportunity to withdraw his guilty plea and restore his right to a trial by jury," and, as a result, his former counsel were ineffective "in that they did not fully explain the rights he was giving up by entering his pleas and proceeding directly to sentencing," and he was thus entitled to the withdrawal of his guilty pleas. Amended Post-Sentencing Motion to Withdraw Guilty Plea, 1/28/25, ¶¶ 13, 15-16 (CP-39-CR-0003504-2022, CP-39-CR-0004223-2022, CP-39-CR-0001310-2023, and CP-39-CR-0001978-2023).

On February 18, 2025, the plea court presided over the post-sentence motion hearing at which Appellant testified, and the Commonwealth presented testimony from one of his former attorneys who represented him at the time of his guilty plea hearing. At the start of the hearing, the court acknowledged that it could take no action with respect to the post-sentence motions filed in the parole revocation cases due to Appellant's filing of his notices of appeal in those cases. *See* Post-Sentence Motion Hearing, 2/18/25, 4.

Appellant testified that he felt that his options at the time of his guilty plea were a "lose, lose situation" because his counsel did not file any pre-trial motions for suppression or severance and because he was left with the options to "go to trial by [him]self and have [counsel] as standby [counsel] or [he] had to have a lawyer present at the time and ready for trial." N.T. Post-

Sentence Motion Hearing, 2/18/25, 7-8. He asserted that he entered his guilty pleas "[b]ecause [he] was told that [he] would be able to withdraw [his] guilty plea[s] and get a trial date later on." *Id.* at 9; *see also id.* at 10 ("they told me that I'll be able to withdraw it if I wasn't comfortable or if it didn't fit everything that I wanted."). He also asserted that he did not know that he would get sentenced on the same day as the guilty plea hearing, but he was not able to "relay" to his counsel that he did not want to be sentenced on the same day. *See id.* at 10-11; *see also id.* at 11 ("I believe my mom asked them to get me sentenced the same day, but that wasn't my wishes."). He asserted that his plan was to go to trial and that he entered the guilty pleas with the intention that he would be able to withdraw them afterwards and then "fire" his counsel before proceeding to trial on a later date. *See id.* at 12-13. He agreed that he did not express his intent to withdraw the guilty pleas at the time of his discussions with plea counsel. *See id.* at 13.

The Commonwealth presented testimony from the attorney who Appellant asserted had advised him on his supposed right to withdraw his guilty pleas. Although counsel's decisions not to litigate pre-trial motions were not directly alleged to have affected the voluntariness of Appellant's guilty pleas, counsel nevertheless explained his reasons for not pursuing those motions. *See* N.T. Post-Sentence Motion Hearing, 2/18/25, 43-47, 64-65. Counsel also addressed his efforts to prepare for a trial and meet with Appellant prior to the scheduled trial date. *See id.* at 49-51. Counsel agreed that, before the scheduled trial date, Appellant never raised any issue of

dissatisfaction with him or expressed any intent to "fire" him as counsel. ***Id.*** at 51. Counsel noted that he explained to Appellant, on the morning of the scheduled trial, his reasons for not filing pre-trial motions. ***See id.*** at 52. Counsel described the nature of the consultations that he and his co-counsel had with Appellant, including discussions in the presence of Appellant's mother on the day of the plea hearing. ***See id.*** at 52-55.

Counsel testified that the decision to enter the guilty pleas was Appellant's, and that counsel believed that Appellant entered the pleas knowingly and intelligently, and without being "forced into it." N.T. Post-Sentence Motion Hearing, 2/18/25, 56. He affirmed that Appellant never said anything that led him to believe "this was just a temporary guilty plea in his mind." ***Id.*** He confirmed that he "went over the grounds for withdrawing the guilty plea[s]" with Appellant and that Appellant indicated his understanding of the limited grounds for plea withdrawal. ***Id.*** at 56-58. Counsel did not agree with Appellant's suggestion that no one had talked to him about proceeding to sentencing on the same day as the guilty plea hearing. ***See id.*** at 58 ("That is not my recollection. I would say that that's not accurate."). Counsel asserted that Appellant was aware that the sentencing would occur on the same date due to the fact that they took steps to get Appellant's family present in court "because he was going to be sentenced." ***Id.*** at 59.

Counsel testified that his advice concerning the process for withdrawing a guilty plea made it clear that any such motion would be decided by the plea court, such that there was no automatic right to withdrawal:

- 18 -

> And in explaining the pleas, I made sure, especially when it came to the attorneys, that you can file that motion, you can seek to withdraw it, but then it's up to the [c]ourt. And then we went through the appellate decisions. If your post[-]sentence motion is denied, if you're not allowed to withdraw your plea, then you have to take an appeal.

N.T. Post-Sentence Motion Hearing, 2/18/25, 60.

At the conclusion of the hearing, the plea court held the plea withdrawal motion under advisement to allow the parties the opportunity to file supplemental briefs. *See* N.T. Post-Sentence Motion Hearing, 2/18/25, 67-71. On the next day, the court issued an order granting a defense request for a thirty-day extension of the time for disposing of the post-sentence plea withdrawal motion pursuant to Pennsylvania Rule of Criminal Procedure 720(B)(3)(b).[10] *See* Order (granting extension of time for consideration of post-sentence motion), 2/19/25, 1 (CP-39-CR-0003504-2022, CP-39-CR-0004223-2022, CP-39-CR-0001310-2023, and CP-39-CR-0001978-2023). After the Commonwealth filed a memorandum of law for the court's review, the plea court denied the amended post-sentence plea withdrawal motion on March 6, 2025. *See* Commonwealth Memorandum of Law, 3/4/25, 1-3 (CP-39-CR-0003504-2022, CP-39-CR-0004223-2022, CP-39-CR-0001310-2023,

---

[10] The court noted that the 120-day disposition period expired on the day of the post-sentence motion hearing where the deadline technically fell on the preceding weekend before a legal holiday on the day before the hearing, and acknowledged that Appellant had moved for a thirty-day extension of that deadline during the hearing. *See* Order (granting extension of time for consideration of post-sentence motion), 2/19/25, 1 & n.1 (CP-39-CR-0003504-2022, CP-39-CR-0004223-2022, CP-39-CR-0001310-2023, and CP-39-CR-0001978-2023).

and CP-39-CR-0001978-2023); Order (denying plea withdrawal motion), 3/6/25, 1 (CP-39-CR-0003504-2022, CP-39-CR-0004223-2022, CP-39-CR-0001310-2023, and CP-39-CR-0001978-2023).

On March 25, 2025, Appellant timely filed separate notices of appeal for each of the criminal matters to which he pleaded guilty on October 14, 2024. *See* Notices of Appeal, 3/25/25, 1 (CP-39-CR-0003504-2022, CP-39-CR-0004223-2022, CP-39-CR-0001310-2023, and CP-39-CR-0001978-2023). In each of the six criminal matters presently before us, Appellant and the plea court complied with their obligations under Pennsylvania Rule of Appellate Procedure 1925. *See* Order (Rule 1925(b)), 11/15/24, 1 (CP-39-CR-1798-2019 and CP-39-CR-3575-2020); Motion for Extension of Time to File Rule 1925(b) Concise Statement, 11/27/24, 1-3 (CP-39-CR-1798-2019 and CP-39-CR-3575-2020); Order (granting extension to file Rule 1925(b) statement), 12/5/24, 1 (CP-39-CR-1798-2019 and CP-39-CR-3575-2020); Motion for Extension of Time to File Rule 1925(b) Concise Statement, 2/10/25, 1-2 (CP-39-CR-1798-2019 and CP-39-CR-3575-2020); Order (granting extension to file Rule 1925(b) statement), 2/12/25, 1 (CP-39-CR-1798-2019 and CP-39-CR-3575-2020); Rule 1925(b) Statement, 3/28/25, 1 (CP-39-CR-1798-2019 and CP-39-CR-3575-2020); Order (Rule 1925(b)), 3/28/25, 1 (CP-39-CR-0003504-2022, CP-39-CR-0004223-2022, CP-39-CR-0001310-2023, and CP-39-CR-0001978-2023); Motion for Extension of Time to File Rule 1925(b) Statement with Attached Rule 1925(b) Statement, 5/4/25 (CP-39-CR-0003504-2022, CP-39-CR-0004223-2022, CP-39-CR-0001310-2023, and CP-

39-CR-0001978-2023); Order (granting extension for filing Rule 1925(b) statement), 5/7/25, 1 (CP-39-CR-0003504-2022, CP-39-CR-0004223-2022, CP-39-CR-0001310-2023, and CP-39-CR-0001978-2023); Plea Court Opinion, 5/9/25, 1-16 (CP-39-CR-0003504-2022, CP-39-CR-0004223-2022, CP-39-CR-0001310-2023, and CP-39-CR-0001978-2023); Plea Court Opinion, 5/16/25, 1-18 (CP-39-CR-1798-2019 and CP-39-CR-3575-2020).

On May 28, 2025, we separately consolidated the appeals from the judgments of sentence in the parole revocation matters and the appeals from the judgments of sentence in guilty plea cases. *See* Superior Court Order (consolidation), 5/28/25, 1 (3059-60 EDA 2024); Superior Court Order (consolidation), 5/28/25, 1 (800-803 EDA 2025). We dismissed the appeals in the guilty plea cases due to Appellant's failure to file an appellate brief but later vacated that order and reinstated those appeals. *See* Superior Court Order (vacating dismissals and reinstating appeals), 9/25/25 (800-803 EDA 2025). We also denied a request for consolidation of the appeals in the parole revocation matters with the appeals in the guilty plea cases. *Id.* Upon review of the various appeals at issue, we now *sua sponte* reverse our prior denial of that consolidation request and have consolidated all six before us for ease of review given that Appellant has filed one brief addressing all six underlying cases and the claim for relief in the parole revocation matters are dependent on the viability of the claim for relief in the guilty plea matters. *See* Pa.R.A.P. 513.

Appellant presents the following questions for our review:

1.  Whether the [plea c]ourt erred in denying [Appellant's] post-sentence motion to withdraw his guilty pleas where the basis of [Appellant's] parole violations was premised on the new charges of which he entered the guilty pleas he sought to withdraw in said motion?

2.  Whether [Appellant's] sentence in the parole revocations must be vacated if it is determined the [plea] court erred in denying [Appellant's] post-sentence motion to withdraw his guilty pleas?

Appellant's Brief, 2-3 (suggested answers omitted).

In his first issue, Appellant asserts that that the trial court erred in denying his motion to withdraw his guilty pleas because he was not "adequately informed by his [] counsel of his rights and [the] ramifications of entering [the] guilty plea[s]." Appellant's Brief, 8. In particular, he alleges that:

[His] review of his post-sentencing rights led him to believe that he could withdraw his pleas as a matter of right. It is clear that he did not understand this mechanism was only by discretion of the court. He entered his guilty plea[s] under the belief that he could unquestionably withdraw them, so long as he filed a motion making that request within ten (10) days from sentencing. Defendant's belief of this fact, in conjunction with his reliance thereupon when [he] entered his guilty pleas, cause[d] his guilty pleas to be unknowing and unintelligent.

*Id.* at 10.

Appellant's underlying theories in support of withdrawal of his guilty pleas intermixes claims that his guilty pleas were involuntary or unknowing with ineffective assistance of counsel affecting his decision to enter his pleas. As a preliminary matter, we note that we may not review any claim to the extent that it challenges the effectiveness of plea counsel. In

- 22 -

*Commonwealth v. Grant*, 813 A.2d 726, 738 (Pa. 2002), our Supreme Court held that, "as a general rule, a petitioner should wait to raise claims of ineffective assistance of trial counsel until collateral review." *Id.* (footnote omitted); *see also Commonwealth v. Nischan*, 928 A.2d 349, 356 (Pa. Super. 2007) ("Generally, claims of ineffective assistance are not to be raised on direct appeal but, rather, they are to be brought in a petition under the Post Conviction Relief Act," 42 Pa.C.S. §§ 9541-46 ("PCRA")) (citing *Grant*, 813 A.2d at 738). There are limited exceptions to *Grant*'s general rule of deferral of ineffective assistance claims to collateral review, but none would apply here.

In *Commonwealth v. Holmes*, 79 A.3d 562, 563 (Pa. 2013), our Supreme Court held that *Grant*'s general deferral rule remained "pertinent law," but also recognized two exceptions to that rule:

> First, … there may be extraordinary circumstances where a discrete claim (or claims) of trial counsel ineffectiveness is apparent from the record and meritorious to the extent that immediate consideration best serves the interests of justice; and we hold that trial courts retain their discretion to entertain such claims.

> Second, … where the defendant seeks to litigate multiple prolix claims of counsel ineffectiveness, including non-record-based claims, on post-verdict motions and direct appeal, we repose discretion in the trial court to entertain such claims, but only if[:] (1) there is good cause shown[;] and (2) the unitary review so indulged is preceded by the defendant's knowing and express waiver of his entitlement to seek PCRA review from his conviction and sentence, including an express recognition that the waiver subjects further collateral review to the time and serial petition restrictions of the PCRA.

*Holmes*, 79 A.3d at 563-64 (citations and footnotes omitted). Our Supreme Court also subsequently created a third exception to *Grant* in *Commonwealth v. Delgros*, 183 A.3d 352, 361 (Pa. 2018), where it held that trial courts must "address claims challenging trial counsel's performance where the defendant is statutorily precluded from obtaining subsequent PCRA review." *Id.*

None of the established exceptions to *Grant* apply here. The first exception that was recognized in *Holmes* would not apply because, even after the evidentiary hearing that was held before the plea court, there was no meritorious claim of ineffectiveness that was immediately apparent from the record where Appellant and his former counsel disagreed about counsel's advice as to the process by which a defendant could pursue a plea withdrawal request. *See* N.T. Post-Sentence Motion Hearing, 2/18/25, 9 (Appellant testifying that counsel told him that he "would be able to withdraw [his] guilty plea[s] and get a trial date later on"), *compare with id.* at 60 (plea counsel testifying that he advised Appellant that a plea withdrawal motion would be "up to the [plea c]ourt"). The second *Holmes* exception would not apply because the record does not reflect that Appellant was ever asked to make an express waiver of his entitlement to later seek review under the PCRA. The *Delgros* exception would not apply because there is no apparent reason to conclude that Appellant would later be statutorily precluded from pursuing subsequent PCRA review. While defendant Delgros needed an exception to *Grant* to pursue collateral review where he was only sentenced to pay a fine,

and the PCRA required him to be presently serving imprisonment, probation, or parole to be eligible for PCRA review, *see Delgros*, 183 A.3d at 354-55, Appellant is not similarly situated with his forty-to-eighty-year imprisonment term. As the *Holmes* and *Delgros* exceptions do not apply here, Appellant's related argument addressing ineffective assistance of counsel and suggesting that improper advice by counsel caused him to enter involuntary and unknowing guilty pleas must be deferred for collateral review under the PCRA.

"After an accused enters a guilty plea, appellate rights are limited to challenges to the validity of the plea, the legality of the sentence imposed, or the trial court's jurisdiction."[11] *Commonwealth v. Flood*, 627 A.2d 1193, 1198 (Pa. Super. 1993). Accordingly, we may review Appellant's plea withdrawal claim to the extent that it is a challenge to the validity of the pleas.

_____

[11] Defendants who tender an open guilty plea, meaning they have proceeded to enter their pleas in the absence of an agreed-upon sentence also have the ability to preserve challenges to the discretionary aspects of a sentence before the plea court and pursue those challenges on direct review. *See Commonwealth v. Hill*, 66 A.3d 359, 363 (Pa. Super. 2013) (holding that defendant may challenge discretionary aspects of a sentence on appeal where open guilty plea is entered). Appellant's sentence was partially negotiated in the sense that his pleas were entered where there was no agreement to an aggregate maximum imprisonment term and only an agreement as to a minimum aggregate imprisonment term. Nevertheless, Appellant did not preserve any discretionary sentence claims, and would not conceivably have such a claim where the plea court imposed the lowest lawful maximum aggregate imprisonment term, merely double the negotiated minimum aggregate imprisonment term. *See* 42 Pa.C.S. § 9756(b)(1) (requiring that a minimum term of imprisonment "shall not exceed one-half of the maximum sentence imposed").

We review Appellant's claim cognizant that he bears the burden of showing that the denial of his plea withdrawal motion was an abuse of discretion and, given the timing of his withdrawal motion, he needed to demonstrate prejudice on the order of a "manifest injustice," consistent with the following:

> The decision to allow a defendant to withdraw their guilty plea post-sentence is a matter that rests within the sound discretion of the trial court. *See Commonwealth v. Muhammad*, 794 A.2d 378, 382-83 (Pa. Super. 2002). Further, a request to withdraw a guilty plea made after sentencing is subject to a higher scrutiny "since courts strive to discourage [the] entry of guilty pleas as sentencing-testing devices." *Commonwealth v. Flick*, 802 A.2d 620, 623 (Pa. Super. 2002) (citation omitted). There, in order to withdraw a plea after the imposition of sentence, a defendant must make a showing of prejudice which resulted in a "manifest injustice." *Id.* (citation omitted). A defendant meets this burden only if he can demonstrate that his plea was entered involuntarily, unknowingly, or unintelligently. *See Commonwealth v. Stork*, 737 A.2d 789, 790 (Pa. Super. 1999).
>
> Moreover, once a defendant enters a guilty plea, it is presumed, he was aware of what he was doing. *See id.* at 790. "A person who elects to plead guilty is bound by the statements he makes in open court while under oath and he may not later assert grounds for withdrawing the plea which contradicts the statements he made at his colloquy." *Commonwealth v. Pollard*, 832 A.2d 517, 523 (Pa. Super. 2003) (citation omitted). In assessing the voluntariness of a guilty plea, we note "[t]he law does not require that appellant be pleased with the outcome of his decision to enter a plea of guilty: All that is required is that [appellant's] decision to plead guilty be knowingly, voluntarily, and intelligently made." *Commonwealth v. Yager*, [] 685 A.2d 1000, 1004 ([Pa. Super.] 1996) (*en banc*) (citation and internal quotation marks omitted).

*Commonwealth v. Alameda*, 339 A.3d 504, 509-10 (Pa. Super. 2025).

Here, Appellant claims that his plea was involuntary because he entered it without knowing the standard that would apply for a subsequent request to withdraw his guilty pleas: "[Appellant] was not aware that the withdrawal of his guilty pleas was within the discretion of the court and not automatic. As such[, Appellant] could not have entered into a knowing and intelligent plea." Appellant's Brief, 8; *see also id.* at 10 ("[Appellant's] review of his post-sentencing rights led him to believe that he could withdraw his pleas as a matter of right. It is clear he did not understand this mechanism was only by the discretion of the court.").

The plea court advises us that it based its denial of Appellant's plea withdrawal motion, at least in part, on a credibility determination, concluding that plea counsel had not advised Appellant as he alleges in support of his instant claim:

> [Appellant] … claims that he was misinformed about his post-sentence rights by his attorneys, and that he believed, based on their advice, that he could withdraw his guilty pleas within 10 days of sentencing. However, having the opportunity to observe the demeanor of [Appellant] and his attorneys, and in consideration of the totality of the circumstances, including [Appellant's] deceptive effort to delay the commencement of the trial, the clear and unequivocal language in the written Guilty Plea Colloquy and Important Post-Sentence Information form and [Appellant's] counseled execution of these document's, the [c]ourt's comprehensive oral colloquy to confirm that [Appellant] understood what he was doing and was pleading guilty voluntarily, [Appellant's] level of intelligence and prior experience in the criminal justice system, [plea counsel's] credible testimony refuting [Appellant's] claim that his attorneys had advised him he could withdraw his guilty pleas within 10 days after sentencing, and [Appellant's] decision to conceal his plan to immediately

> withdraw his guilty pleas, the [c]ourt finds that [Appellant's] claim is implausible, unsubstantiated, and without merit.
>
> …
>
> The record evidence substantiates that [Appellant] was fully aware of what he was doing when he entered his guilty pleas, and therefore, his amended post-sentence motion to invalidate the guilty pleas was properly denied.

Plea Court Opinion, 5/9/25, 15 (CP-39-CR-0003504-2022, CP-39-CR-0004223-2022, CP-39-CR-0001310-2023, and CP-39-CR-0001978-2023).

Appellant, in his brief, fails to acknowledge the plea court's evaluation of his plea withdrawal claim or offer us citations to legal support suggesting that an absence of knowledge concerning the process for withdrawing a guilty plea implicates the voluntariness of a plea. The plea court's credibility determinations following the evidentiary hearing on the post-sentence motions, are binding on us and confirm that a manifest injustice was not supported by the record. Nevertheless, we also reject Appellant's plea claim as meritless under controlling precedent. The voluntariness of Appellant's guilty pleas did not hinge of his awareness of the standard that would apply to any plea withdrawal requests, as we explain below.[12]

Pennsylvania Rules of Criminal Procedure 590 and 591, which control the entry and withdrawals of guilty pleas, do not mandate any warnings to defendants entering guilty pleas, concerning the process by which they may

_____

[12] "[A]n appellate court is not bound by the rationale of the trial court and may affirm on any basis if the record supports it." *Commonwealth v. Diaz*, 183 A.3d 417, 421 (Pa. Super. 2018).

pursue the withdrawal of their pleas.[13]  Our Supreme Court explicitly noted,

with respect to the precursor rule to the present Rule 590, that specific type

of notice is not a prerequisite for a voluntary plea:

> [Chumley] also urges us to reverse because of the court's failure to inform him of how, when, or under what circumstances the plea could be withdrawn.  This claim too is without merit.  Knowledge of the procedural aspects of the right to withdraw the plea does not bear upon whether it was voluntary in the first instance.

***Commonwealth v. Chumley***, 394 A.2d 497, 504 (Pa. 1978).  This Court has

adopted the same reasoning for the present rules pertaining to guilty pleas:

---

[13] The comment to Rule 590 recommends that, "at a minimum," the plea court should ask questions to elicit the following information:

(1) Does the defendant understand the nature of the charges to which he or she is pleading guilty or *nolo contendere*?

(2) Is there a factual basis for the plea?

(3) Does the defendant understand that he or she has the right to trial by jury?

(4) Does the defendant understand that he or she is presumed innocent until found guilty?

(5) Is the defendant aware of the permissible range of sentences and/or fines for the offenses charged?

(6) Is the defendant aware that the judge is not bound by the terms of any plea agreement tendered unless the judge accepts such agreement?

(7) Does the defendant understand that the Commonwealth has a right to have a jury decide the degree of guilty if the defendant pleads guilty to murder generally?

Pa.R.Crim.P. 590, Comment.

> If the colloquy properly informs the defendant of the rights he is waiving by virtue of the plea, and the defendant knows his sentence, the guilty plea is not involuntary or unknowing simply because the court failed to inform the defendant beforehand of the standard that would apply to a petition to withdraw the plea. ***See generally Commonwealth v. McClendon***, [] 589 A.2d 706, 711-12 ([Pa. Super.] 1991) (*en banc*), ***appeal denied***, [] 897 A.2d 1151 ([Pa.] 1991) (stating court is not required to inform defendant of relative standards for withdrawing guilty plea before before sentencing). In other words, the integrity of a defendant's plea remains intact even if the court failed to inform the defendant of "how, when, or under what circumstances the plea could be withdrawn." ***Chumley***, ***supra*** at [] 394 A.2d at 504 (stating guilty plea constitutes waiver of rights associated with trial; knowledge of supplementary rights is not necessary to validate plea).

*Commonwealth v. Prendes*, 97 A.3d 337, 352-53 (Pa. Super. 2014), *impliedly overruled on other grounds by Commonwealth v. Hvizda*, 116 A.3d 1103, 1106 (Pa. 2015) (overruling the holding in *Commonwealth v. Lesko*, 467 A.2d 307 (Pa. 1983), that the post-sentence plea withdrawal standard applies to plea withdrawal requests where the parties have negotiated a sentence, but the defendant moves to withdraw the plea prior to sentencing; *Prendes* also relied on that holding in *Lesko*).

Under *Prendes* and *Chumley*, Appellant's pleas were voluntarily tendered regardless of whether the plea court or counsel had informed Appellant beforehand of the standard that would apply to a petition to withdraw the guilty pleas. Appellant's supposed lack of knowledge as to the procedural aspects of the process for seeking the withdrawal of his guilty pleas did not implicate the validity of his guilty pleas or provide any basis for concluding that his pleas were involuntarily, unknowingly, or unintelligently

entered. ***See Commonwealth v. Zazo***, 479 A.2d 606, 607 (Pa. Super. 1984) (holding that plea counsel is not required to advise a client who has elected to plead guilty that he can proceed to withdraw the plea prior to sentencing; "Such advice is not required to permit a defendant to enter a knowing and intelligent plea of guilty."); ***Commonwealth v. Klinger***, 470 A.2d 540, 549 (Pa. Super. 1983) ("It would be absurd to hold that a guilty plea is involuntary or unknowing if the defendant is not told beforehand that after entering the plea he will be allowed to petition to withdraw it."). Accordingly, Appellant's first issue is meritless.

In his second issue, Appellant reasons that an entitlement to relief on his plea withdrawal claim would necessitate vacating his parole revocation sentences because the parole violations were predicated on the convictions admitted by his guilty pleas. ***See*** Appellant's Brief, 10-11. As we have rejected any entitlement to relief on Appellant's plea withdrawal claim, his contingent argument in his second issue requesting the vacation of his parole revocation sentences must also fail.

Judgments of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 6/22/2026

- 31 -